## BOARD OF WATER COMMISSIONERS OF THE CITY OF HARTFORD *vs.* THE TOWN OF BLOOMFIELD.

First Judicial District, Hartford, May Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

General Statutes, § 2321, provides that land taken by a municipality for the purpose of supplying water for its use or benefit shall be exempt from taxation when the inhabitants of the town in which such land is situated "have the right to the use of and do actually use such water supply upon the same terms and conditions as the inhabitants of such municipal corporation"; but otherwise shall be liable to taxation. *Held* that the right to use and the actual use of the water must concur, in order to render the land thus taken exempt from taxation; and that the "right" to the use implied the existence of a legal obligation upon the part of the municipality to furnish the water to all of the inhabitants of the town in which the land was located.

The plaintiff having acquired land in Bloomfield which it used in part for one of its reservoirs and in part for a water-shed therefor, was "authorized and empowered" in 1901 (13 Special Laws, p. 831, § 1) to extend its water mains through Blue Hills Avenue northerly into Bloomfield to a cemetery, and "thence" to such other points in the town as might "be agreed upon" by the plaintiff and the selectmen of Bloomfield, and was required (§ 2) to supply water from such extended mains to any of the inhabitants of Bloomfield living within a half mile thereof, upon the same terms and conditions as it was then furnished to inhabitants of the city of Hartford, viz., upon the applicant giving a bond conditioned that the annual return for water consumed in the territory supplied by such extension should equal ten per cent. of its cost. *Held:*—

1. That § 1 of the Act imposed upon the plaintiff the duty of extending its water mains through Blue Hills Avenue northerly to the cemetery, and *thence* to such points as might be agreed upon by the plaintiff and the selectmen.

2. That by " water mains " in § 1 was meant the line of main pipes as distinguished from laterals or connections made with such line.

3. That § 2 imposed upon the plaintiff the duty of supplying water from such mains to any inhabitant living within one half mile thereof, upon compliance with certain conditions; and also provided for the laterals from such mains.

4. That there was no provision in the Act for building water mains or laterals in those portions of the town which lay respectively east

and west of the half-mile strip on either side of Blue Hills Avenue and between the Hartford town line and the latitude of the cemetery, and therefore all of the inhabitants of Bloomfield (a town about four miles square) residing in such portions of the town were without the right to secure or make use of such water supply.

5. That the requirement of the statute (§ 2321) as to "actual use" did not mean that every person in the town must be using the water, but was satisfied if all those were supplied with water who requested it and complied with the prescribed conditions.

Whether the inhabitants of the town residing north of the line of the cemetery had the right to use the water, *quære.*

The plaintiff contended that it was willing to supply, and had never refused to supply, any inhabitant of the defendant town with water upon the same terms and conditions as prevailed in Hartford, and the trial court so found. *Held* that this was immaterial, since the question was not one of the plaintiff's willingness, but one of legal right in all the inhabitants of the defendant town.

The rule of the plaintiff requiring a bond of an applicant for an extension of water mains and laterals was claimed by the defendant to be prohibitive. *Held* that in view of its long existence and of its practical recognition by the General Assembly in 1879, it ought not now to be declared unreasonable, in the absence of any fact or conclusion in the finding to sustain such a contention.

A municipal water board ought not to be compelled to build water mains and laterals unless they are likely to yield such a return as to reimburse the board for their cost.

Lands used for reservoirs for collecting and storing water for the use of the inhabitants of a city are held for the public good.

Argued May 3d—decided July 31st, 1911.

APPLICATION in the nature of an appeal from the refusal of the board of relief of the town of Bloomfield to rule that land in said town owned by the plaintiff as part of its water system was exempt from taxation, brought to and tried by the Superior Court in Hartford County, *Bennett, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *Error and cause remanded for the entry of a judgment in favor of the defendant.*

The board of water commissioners of the city of Hartford, in behalf of the city, was, by the General Assembly in 1853, empowered to do all things neces-

sary or convenient for supplying water to said city, including the authority to take and hold any stream or watercourse or land necessary for reservoirs in West Hartford (5 Special Laws, p. 769) and in Bloomfield (7 Special Laws, p. 878). Acting under such authority said board acquired two hundred and forty-six acres of land in Bloomfield, and is using from fifty to sixty acres of it, in connection with land in West Hartford, for a reservoir, and the remainder of it for a watershed for said reservoir.

Water is conducted from this reservoir to a distributing reservoir in West Hartford, and thence by pipes through the highways of West Hartford to the city of Hartford. No part of the water collected in said reservoir in Bloomfield is conducted by means of pipes, or otherwise, directly from said reservoir through Bloomfield to Hartford.

In 1901 (13 Special Laws, p. 831) the General Assembly passed the following Act: "Section 1. That the board of water commissioners of the city of Hartford is hereby authorized and empowered to extend its water mains from the Hartford and Bloomfield town line through the highway known as Blue Hills avenue northerly into the town of Bloomfield, and to the second or main entrance to Mount St. Benedict's cemetery, and thence to such other points in the town of Bloomfield as may be agreed upon by said board of water commissioners and the selectmen of the town of Bloomfield. Said board of water commissioners shall have control of said water mains, and of the connections thereto, and shall have the same rights and be subject to the same duties and obligations in respect thereto, and to the laying and repair thereof, as though the same were within the limits of the city of Hartford.

"Sec. 2. It shall be lawful and it shall be the duty of said board of water commissioners to supply water

from such extended mains to any of the inhabitants of said town of Bloomfield living within one-half of a mile of said line of main pipes, so extended, upon the same terms and conditions under which water is now supplied to inhabitants of the town of West Hartford."

Pursuant to such authority, the board in 1901 extended one of its water mains in Blue Hills Avenue into Bloomfield, and the extension of this main and its lateral connections to the present time has aggregated five thousand three hundred and fifty feet.

Said board furnishes water in Bloomfield to its inhabitants upon the same terms and conditions as to those of Hartford.

Said board has extended its main in Bloomfield in every instance in which its inhabitants have asked for such extension.

One of these conditions requires that applicants for extensions of mains shall give a bond conditioned upon the annual receipt by said board for water consumed in the new territory supplied of ten per cent. of the cost of such extensions, unless said board shall waive this condition.

Bloomfield has a population of about two thousand, with two centers of population, one where the main is already laid, and one at Bloomfield Center, two miles distant therefrom.

In 1909 the board of assessors of Bloomfield placed said two hundred and forty-six acres upon the assessment list at a valuation of $6,145. The board of water commissioners took an appeal to the board of relief, claiming exemption under § 2321 of the General Statutes, which reads as follows: "Land owned or taken by any municipal corporation for the purpose of creating or furnishing a supply of water for its use or benefit shall be exempt from taxation, when the in-

habitants of the town in which said land is situated have the right to the use of and do actually use such water supply upon the same terms and conditions as the inhabitants of such municipal corporation; but otherwise said land shall be liable to taxation."

Upon the refusal of the board of relief to change the action of the assessors, the board took an appeal to the Superior Court in Hartford County, upon which judgment was rendered in favor of said board, and from that judgment the town has appealed.

*Joseph P. Tuttle,* for the appellant (defendant).

*William Waldo Hyde* and *Alvan Waldo Hyde,* for the appellee (plaintiff).

WHEELER, J. The appeal concerns a single question: Is the reservoir property of the board of water commissioners of Hartford, in Bloomfield, subject to taxation under the provisions of General Statutes, § 2321?

Before the passage of this Act, chapter 79 of the Public Acts 1879, p. 429, now General Statutes, § 2321, lands held by one municipal corporation for its public good, within the limits of another, were exempt from taxation.

Lands used for reservoirs for collecting and storing water for the use of the inhabitants of a city are held for the public good. *West Hartford* v. *Water Commissioners,* 44 Conn. 360. This Act is a limitation upon the exemption from taxation existing in the general law before its passage. Presumably the Act was passed to avoid the effect of this decision. It provided that land taken in Bloomfield for a water-supply shall be exempt from taxation (a) when its inhabitants have the right to the use of such water-supply upon the same

terms and conditions as the inhabitants of Hartford, and (b) when its inhabitants actually use the water of this reservoir upon the same terms and conditions as the inhabitants of Hartford. Both the right to such use and the actual use of the water must concur to give the board the benefit of the exemption.

The right to such use is determined by the construction to be placed upon the language of the Act (13 Special Laws, p. 831) conferring upon said board the authority to lay its mains in Bloomfield.

We think the intent of the General Assembly, in § 1 of this Act, was to give the board the power and to impose upon it the duty of extending its water mains from the town line through Blue Hills Avenue to the cemetery, and thence to extend such mains to such points as might be agreed upon by said board and the selectmen, and to lay the mains and supply the inhabitants along their line upon the same terms and conditions as exist in the city of Hartford.

By "water mains" is meant, in this connection, the line of main pipes as distinguished from laterals or connections made with the line of main pipes. The statute specifies a point to which the mains from the town line shall be carried through Blue Hills Avenue, and specifies that these may be extended thence from this point to such other points as may be agreed upon by said board and the selectmen, thus clearly referring to the line of main pipes. Extensions beyond the cemetery are subject to agreement between the board and selectmen. Consent of the selectmen is in the interest of the town, giving them some discretion as to the necessity of the extension, and over the location and manner of making the same.

We do not agree with the town that there was no duty upon the board of laying these mains. Such a construction of the Act would make optional with the

board all extensions of service, and make these dependent upon its willingness to build rather than upon the needs of the community.

Section 1 provides for the line of main pipes; § 2 for the laterals,—it imposed upon the board the duty of supplying water "from such extended mains" to any inhabitants "living within one-half of a mile of said line of main pipes, so extended." Since Bloomfield is about four miles square, it is plain that if the line of main pipes was extended and all of the laterals built on either side for a half mile, there would still be the greater part of the area of the town which could never have access to the supply of water, and hence the inhabitants within this section cannot be said to have the right to the use of it.

The board contends that it is its legal duty under this Act to supply water to all of the inhabitants of Bloomfield. We have not had pointed out to us the ground of this claim. If it be found in the language imposing upon it the duty of laying water mains "thence to such other points in the town of Bloomfield," it must be admitted that "thence" refers to points beyond the cemetery, and though it be conceded to be the duty of the board to lay mains and laterals to all points in the town beyond the cemetery, no authority can be found in this language for laying them between the Hartford town line and the cemetery. Authority for laying laterals in this latter territory is found in § 2, and these are confined to the territory a half mile on either side of the line of main pipes, and all of the territory with its inhabitants outside of these limits is without the right to secure water. So that such a construction, if permissible, would not avoid the real difficulty—all of the inhabitants do not have the right to the use of the water-supply.

In its control of the line of water mains and their

extensions, the board have the same rights and are subject to the same duties and obligations in respect thereto as though these were in Hartford. This places upon the board the duty of giving to Bloomfield the same rates of service as prevail in Hartford, and this has always been done. It subjects the service to the same conditions as are imposed by the board in Hartford. One of these is that applicants for extensions of mains in Hartford, or elsewhere, shall give a bond conditioned upon the annual receipt by the board for water consumed in the new territory of ten per cent. of the cost of such extensions, unless waived by the board. Section 2 provides that the laterals may be built upon the same terms and conditions under which water is supplied in West Hartford, and the Act relating to the water-supply for West Hartford compels the giving of a similar bond. So far as appears there is nothing unreasonable in such requirement.

The board is a municipal agency; it ought not to be compelled to build water mains or laterals unless these are to be used so as to yield such a return on the outlay as to reimburse the board for the cost. The General Assembly, by adopting this rule in the case of West Hartford, recognized its reasonableness; the rule itself has been in force in Hartford for years, and so far as this record goes, its reasonableness has never been attacked, and, though the rule itself did not bear upon its face strong evidence of its reasonableness, these considerations ought to control in the absence of fact or conclusion in the finding to the contrary. There is nothing prohibitive in a rule of this character.

The second question involved, whether the inhabitants of Bloomfield actually use the waters of this reservoir upon the same terms and conditions as the inhabitants of Hartford, is answered in the affirmative by the finding. The town contends by "use" is

meant a general use and not the use by a few; for ex-
ample, those living in the Blue Hills Avenue section of
Bloomfield. The board has in every case in the past
extended its mains and laterals upon application by
any of the inhabitants of Bloomfield, and all in the
future can secure favorable action upon their applica-
tions by complying, in proper cases, with this rule or
with the terms of the statute. 12 Special Laws, p. 494.
The board does not deny this right of user, or seek to
unreasonably curtail it; on the contrary, it urges upon
us just the opposite conclusion. In its brief it says:
"The important consideration is that every inhabitant
of Bloomfield has the right to demand a supply of
water from the board of water commissioners of the
city of Hartford at the same rates as are paid by the
inhabitants of Hartford, and, if necessary, to compel
an extension of the mains by means of which such a
supply of water may be furnished, simply by comply-
ing with the conditions which are in force in Hartford
and West Hartford governing the extension of water
mains." Since all who have made application for ex-
tensions or laterals are actually using the water fur-
nished by the board, and at the same rates as in Hart-
ford, it must be conceded that there is ample warrant
for the finding: "Water from said reservoir . . . is
supplied to and is actually used . . . by the inhabi-
tants of . . . Bloomfield upon the same terms and
conditions as to and by the inhabitants of . . . Hart-
ford."

The board of water commissioners is ready to supply
water to all inhabitants of Bloomfield upon the same
terms and conditions as it does the inhabitants of
Hartford. These terms and conditions are reasonable.
If it were the duty of the board to do what it is willing
to do, and the inhabitants of Bloomfield had the right
to compel the use of the water-supply upon the same

terms and conditions as the inhabitants of Hartford, the board would be entitled to an exemption from taxation, but this is not the case here. The board is under no legal obligation to furnish such supply, and the inhabitants have no right to compel its use.

There is undoubted hardship in the case which can be relieved only by legislation.

There is error, the judgment is reversed, and the case remanded with direction to enter judgment sustaining the action of the board of relief confirming the action of the assessors.

In this opinion the other judges concurred.