CITY OF BOSTON *vs.* EDISON ELECTRIC ILLUMINATING COMPANY
OF BOSTON.

Suffolk. March 22, 23, 1922. — July 1, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, & JENNEY, JJ.

*Electric Company. Department of Public Utilities. Public Service Corporation. Contract,* Implied.

Although at common law a consumer of electricity might recover of a public
service corporation, whose chartered functions are to furnish electricity for
public and private illumination and motive power and upon which the con-
sumer is dependent as the only source available from which he can procure
electricity in any feasible manner, sums in excess of a reasonable rate, which
were exacted by the corporation and which it was necessary for him to pay
in order to get electricity, and in such action it was not necessary for him to
allege and prove that the sums so exacted were paid by him under protest,
since this Commonwealth now under G. L. c. 164, §§ 76, 79, 83, 92–94, 125,
has taken complete control through its department of public utilities of the
subject of rates to be charged by. such corporation and by comprehensive
legislation has conferred great but well defined powers upon the department
sufficient fully to protect from injustice and abuse those who are dependent
upon such a corporation for electricity, a consumer here cannot maintain an
action at law against such a corporation to recover rates thus unreasonably
exacted.

CONTRACT OR TORT, with a declaration as amended in four
counts, to recover rates incorrectly and unreasonably exacted of
the plaintiff by the defendant. Writ dated August 16, 1921.

The allegations of the first five paragraphs of the first four
counts of the declaration as amended are described in the opinion.
In the first count it further was alleged that, by reason of erroneous
computation by the defendant under its coal clause, described
in the opinion, the plaintiff had paid to the defendant between
May 1, 1918, and August 12, 1921, $11,276.93 in excess of what
it should have paid even under that clause, and the plaintiff sought
to recover that sum. The second count was based on allega-
tions that the charges under the coal clause were in excess of a
reasonable charge and that they were exacted by the defendant
unjustifiably, unequally and in a discriminatory manner, and in
violation of the defendant's duty as a public service corporation,
wherefore the plaintiff sought to recover the entire sums alleged

to have been so exacted, amounting between May 1, 1918, and August 12, 1921, to $41,788.20. The third count was based on allegations as to similar exactions of excessive rates under the "percentage clause," so called, and sought recovery of sums alleged to have been so exacted, amounting between May 1, 1918, and August 12, 1921, to $29,868.99. The fourth count, alleged to be for the same causes of action as set out in the second and third counts, was for money had and received to the plaintiff's use in the sum of $71,647.19 and was based on an account annexed.

The defendant demurred. All grounds of demurrer excepting the fourth, fifth and sixth, which related solely to the second, third and fourth counts of the amended declaration, were waived. They were as follows:

"4. That no one of said [second, third or fourth] counts sets out a cause of action.

"5. That the court has no jurisdiction to permit the plaintiff to recover on the facts alleged in said counts.

"6. That it is not averred in any of said counts that the rates alleged to be unfair and unreasonable are in excess of rates fixed by the department of public utilities or by its predecessor the board of gas and electric light commissioners."

The demurrer to the second, third and fourth counts was heard by *Hammond*, J., and was sustained, and, being of opinion that the order sustaining the demurrer so affected the merits of the controversy that before further proceedings the matter ought to be determined by this court, at the request of the parties he reported to this court for determination the questions raised by the causes of the demurrer above set out, "the said order to be affirmed, modified or reversed."

*A. D. Hill*, (*S. Silverman & R. H. Wiswall* with him,) for the plaintiff.

*F. M. Ives*, for the defendant.

BRALEY, J. The material allegations of the declaration as amended are as follows: "The defendant is a public service corporation organized and existing under the laws of this Commonwealth and subject to the provisions of chapter one hundred and sixty four of the General Laws relating to the manufacture and sale of gas and electricity, and is engaged in the business of

furnishing electric light and power to users thereof in the city of Boston and vicinity, and as such public service corporation so engaged is bound to furnish electric light and power to users thereof at reasonable rates, and to charge therefor no more than reasonable rates and prices. . . . Neither the department of public utilities nor its predecessors the board of gas and electric light commissioners and the board of gas commissioners has at any time made any order relative to the price of electricity furnished or to be furnished by this defendant. On or about December 27, 1906, an association known as the Public Franchise League, composed of residents of the Metropolitan District of Boston, filed a petition with the Gas and Electric Light Commission, a copy of which, marked 'A,' is annexed to and made a part hereof. Thereafter the said Gas and Electric Light Commission, after notice to the defendant and notice by publication in all the Boston daily papers and by mail to the mayors of all cities and the selectmen of all towns served by the defendant company, gave a number of public hearings at which the defendant was represented by counsel and in which it took part, and on or about May 29 filed a report and made certain recommendations, which . . . were printed in the Twenty-fourth Annual Report . . . pages twenty to fifty," and "are hereby incorporated . . . and made a part hereof." "The plaintiff is and for many years has been a user of electric light and power furnished by the defendant, and is dependent upon the furnishing of such electric light and power . . . and is unable properly to perform its municipal and corporate functions if the furnishing of such electric light and power by the defendant is interrupted; — there being no other source available from which the plaintiff can obtain such electric light and power in any reasonably practicable manner.

"For the past six years and more the defendant has exacted of its customers, including the plaintiff, . . . charges for the electric light and power so furnished, which said rates and charges are of three different sorts.

"First — The . . . regular rates and charges as distinguished from the additional rates and charges under the coal clause and the percentage charge hereinafter referred to.

"Second — Certain additional rates under and by virtue of the

terms of a clause which the defendant in or about the year 1918 added to its pre-existing regular rates and charges; — said clause being commonly known as the 'coal clause,' and being as follows: 'Whenever during any month in which electricity is furnished under this schedule the cost at its stations of a sufficient amount of coal used by the company to do the work of a long ton of coal under the conditions prevailing during the calendar year 1916, and according to the provisions of its contracts then in force, applying the specifications therein to all kinds of coal, exceeds the cost of such long ton at its stations during the year 1916 then for each and every one cent of such excess cost a charge will be made, in addition to the prices named in this schedule of 1¼ cents per thousand kilowatt hours for all kilowatt hours (whether measured by meter or estimated) sold under this schedule.' " The coal clause was so modified in the defendant's schedule of rates corrected to May 11, 1921, as to read, " 'The total cost of coal used by the company at its generating stations during each calendar month in excess of $3.689 per long ton will be divided by the kilowatt hours manufactured and purchased during the month, and the resulting amount per kilowatt hour, adjusted to cover the average losses in low tension service, will be charged for each kilowatt hour sold under this schedule.' (In certain schedules a further modification has been made providing for adjustments for losses in high tension service.)

"Third. — Certain further additional charges which the defendant in or about the year 1918 added to its pre-existing regular rates and charges, amounting in certain instances to ten per cent, and in certain instances to five per cent of the amount of the defendant's regular charge first above referred to. . . .

"The nature and conduct of the defendant's business is such that all information relative to the basis of the various charges . . . for electricity and relative to the cost at the defendant's stations of a sufficient amount of coal used by the defendant to do the work of a long ton of coal under the conditions prevailing during the calendar year 1916, and according to the provisions of its contracts then in force, as well as all other information necessary for the computation of charges for electricity and under the terms of said coal clause is exclusively within the control of the defendant; said information is of a highly technical nature,

so that it is impossible for the defendant's customers, including the plaintiff, to ascertain without laborious and expensive investigation whether or not charges which the defendant purports to exact for electricity and under the terms of said coal clause are correctly computed in accordance with the terms thereof and whether any or all of the said charges are reasonable charges for the electricity supplied. The defendant's customers, including the plaintiff, are and at all times have been obliged to accept and to pay such charges as have been computed by the defendant, without knowing and without any opportunity to know whether or not such charges are correct or reasonable."

The second and third counts further allege, that the defendant's regular charges as above described during the time covered by the declaration have been in excess of a reasonable charge for the electric light and power furnished, and the defendant also has exacted additional rates and charges for all light and power furnished between May 1, 1918, and August 12, 1921, especially under the terms of the coal clause. The amount collected by the use of the coal clause in addition to all other rates and charges is fixed at $41,778.20. It is also alleged that a percentage charge was imposed amounting in some instances to five per cent of its regular charge for similar service. The amount paid is placed at $29,868.99. The action therefore is to recover $71,647.19, upon the ground that the money was illegally exacted.

The causes of demurrer now relied on are, that the courts have no jurisdiction of the causes of action as stated in counts two, three, and four, either at common law or under our statutes.

The defendant is a public service corporation whose chartered functions are to furnish electricity for public and private illumination and motive power for which it can lawfully exact a reasonable compensation. G. L. c. 164, §§ 5–33. *Weld* v. *Gas & Electric Light Commissioners,* 197 Mass. 556, 557. *Chicago, Milwaukee & St. Paul Railway* v. *Tompkins,* 176 U. S. 167, 180; 44 U. S. Sup. Ct. Rep. (Law. ed.) 417, and note. A jury could find on evidence supporting the specific allegations, that the charges demanded and collected under the percentage and coal clauses which were added to its regular rates were in excess of reasonable prices for what it contracted to furnish to the plaintiff. A public service corporation which supplies electricity is ordinarily under the same obligation

to the public to refrain from exorbitant and unreasonable rates as a common carrier whose charges for transportation, if in excess of such rates, may be recovered back in an action at common law, unless the right has been taken away or limited by statute. "Without going into detail, it may not be doubted that at common law, where a carrier refused to receive goods offered for carriage except upon the payment of an unreasonable sum, the shipper had a right of action in damages. It is also beyond controversy that when a carrier accepted goods without payment of the cost of carriage or an agreement as to the price to be paid, and made an unreasonable exaction as a condition of the delivery of the goods, an action could be maintained to recover the excess over a reasonable charge. And it may further be conceded that it is now settled that even where, on the receipt of goods by a carrier, an exorbitant charge is stated, and the same is coercively exacted either in advance or at the completion of the service, an action can be maintained to recover the overcharge." *Texas & Pacific Railway* v. *Abilene Cotton Oil Co.* 204 U. S. 426, 436.

The doctrine of voluntary payment is also invoked to defeat the action. It is true there is no allegation that the plaintiff paid the demands complained of under protest. But the demurrer admits all facts well pleaded. *Lowell* v. *Morse*, 1 Met. 473. It is alleged that the plaintiff was dependent upon the furnishing of electric light and power by the defendant and was unable properly to perform its municipal and corporate functions if the obtainment of such electric light and power from the defendant was interrupted, there being no other source available from which it could be procured in any feasible manner. Where money is paid under compulsion it is said that the law implies an obligation to refund, and the form of action is for money had and received to the plaintiff's use. A jury could find that the circumstances created a necessity of payment as the only means of immediate relief. And the situation in which the plaintiff admittedly was placed is sufficient to do away with this ground of defence as matter of law on the present record. *Carew* v. *Rutherford,* 106 Mass. 1, 11, 12, and cases cited. *Parker* v. *Great Western Railway,* 7 Man. & Gr. 253. *Cullen* v. *Seaboard Air Line Railroad,* 63 Fla. 122. *Chicago & Alton Railroad* v. *Chicago, Vermilion & Wilmington Coal Co.* 79 Ill. 121. *Illinois Glass Co.* v. *Chicago Telephone Co.*

234 Ill. 535, 543.  *Swift Co.* v. *United States,* 111 U. S. 22, 28, 29.

The defendant's principal contention however is that, under St. 1914, c. 742, § 162, an act to consolidate the laws relative to the manufacture, distribution and sale of gas and electricity (see now G. L. c. 164, § 93), the board of gas and electric light commissioners, and since St. 1919, c. 350, § 117, G. L. c. 25, the department of public utilities, the remedy at common law has been superseded.  It is well settled that when legislation covers the entire field, the provisions of the common law in conflict therewith are no longer in force.  *Doyle* v. *Kirby,* 184 Mass. 409.  *Attorney General* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 194.  *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 178.  *Warr* v. *Collector of Taxes of Taunton,* 234 Mass. 279, 282.  See *Ryalls* v. *Mechanics' Mills,* 150 Mass. 190.  By § 162 of St. 1914, c. 742 (see now G. L. c. 164, § 93), "Upon the complaint in writing of the mayor of a city or the selectmen of a town in which a gas or electric company is operated, or of twenty customers thereof, either as to the quality or price of the gas or electricity sold and delivered, the board shall notify said company by leaving at its office a copy of such complaint, and shall thereupon, after notice, give a public hearing to such petitioner and said company, and after said hearing may order any reduction in the price of gas or electricity or an improvement in the quality thereof, and a report of such proceedings and the result thereof shall be included in its annual report.  The maximum price fixed by such order shall not thereafter be increased by said company except as provided in the following section."  By § 163 (see now G. L. c. 164, § 94), "A gas company which furnishes gas under the provisions of general or special laws or of any contract with a city or town, and a gas or electric company which is engaged in the sale and delivery of electricity, may apply to the board to fix and determine the price of gas or electricity to be thereafter sold and delivered by said company, or to revise any former order or action of said board relative to the quality or price thereof.  Said board shall, after notice, give a public hearing to the petitioner, to the city or town and to all other persons interested, and thereafter may pass such orders relative to the price and quality of the gas or electricity thereafter to be furnished by said

company as it determines are just and reasonable. Such orders shall be binding upon all parties until the further order of said board." And by § 142 (see now G. L. c. 164, § 79), this court and the Superior Court are given jurisdiction in equity upon application formerly of the board, but now of the department, to enforce all lawful orders made under these sections. The court in considering the provisions of R. L. c. 121, § 33, as amended by St. 1903, c. 164, said in *Weld* v. *Gas & Electric Light Commissioners*, 197 Mass. 556, where the petitioner filed with the board a petition for an order that the respondent be directed and required to supply him with electricity at his house upon such terms and conditions as might after a hearing be found legal and reasonable, "We have adopted, in this State, legislative regulation and control as our reliance against the evil effects of monopoly, rather than competitive action between two or more corporations, where such competition will greatly increase the aggregate cost of supplying the needs of the public, and perhaps cause otherwise inconveniences. Under the R. L. c. 121, §§ 1, 5, 6, 8, 14, 15, 26, 34 and 35, the board of gas and electric light commissioners are given supervision and control over all companies furnishing gas or electricity to the public for lighting, and, among other things, they may order, under § 34, any reduction in the price of gas or electric light, or improvement in the quality thereof. . . . The State, through the regularly constituted authorities, has taken complete control of these corporations so far as is necessary to prevent the abuses of monopoly. . . . The petitioner is seeking the enforcement of an alleged public right. His private interest is not independent of the rights of the public, but he claims only through the public, and as one of the citizens who are to be served by the respondent." It was held that the action of the respondent denying the petition because no public interest required that it should be granted, and "some positive disadvantages to the public interest" might follow if an order was made, should not be disturbed and the petition was dismissed. See G. L. c. 164, §§ 92, 125.

The department is given full authority to determine the rates at which electricity shall be sold. If every dissatisfied customer can bring an action at common law, it is obvious that no schedule as established could have any degree of uniformity and permanency. A verdict or finding for the plaintiff might imper-

atively require a complete revision of the schedule rates so frequently as to unsettle any satisfactory or just administration of the service. *Texas & Pacific Railway* v. *Abilene Cotton Oil Co.* 204 U. S. 426. And serious impairment of the obligation of efficiency which the defendant as a *quasi* public service corporation owes to the public would ensue. It was said in *St. Paul Book & Stationery Co.* v. *St. Paul Gaslight Co.* 130 Minn. 71, a bill in equity to enjoin the defendant from enforcing alleged unreasonable rates, "If a statutory rate can be enjoined by a customer, it would seem to follow that he may also sue for any amount which he deems he has paid in excess of an alleged reasonable rate. It would be almost certain that no two juries would fix upon the same amount as the reasonable price. We think the result of permitting such litigation, at the instance of the individual consumer, would be utterly destructive of all legislative regulation of public service corporation rates." The statute is comprehensive. It provides ample protection for the public and its members. The rates imposed can be fully examined, and whether they are reasonable and lawful, or extortionate, determined on petition by the mayor of a city, or the selectmen of a town, or on a petition of twenty customers, a limitation within the power of the Legislature to impose in the interests of the public welfare. *Chase* v. *Proprietors of Revere House,* 232 Mass. 88. The mayor moreover could have petitioned for a revision of the rates the city was compelled to pay, on the ground that they were excessive and unreasonable. The right of petition is conferred upon him for the benefit of all citizens, and he can act upon the complaint even of one consumer, if in his judgment such action is necessary for the protection of the community. If the rates prescribed are exceeded by the defendant, the department on complaint of the violation can, as we have said, institute judicial proceedings for enforcement of its order. It is to be assumed that the great but well defined powers conferred upon the department are sufficient to protect those who are dependent upon the defendant for electricity from injustice and abuse.

The statute among other provisions having covered all cases concerning the rates established by the defendant, and made them subject to the power of revision and modification vested in the department, the plaintiff is confined to its provisions as affording a comprehensive, simple and practical means for redress. The

following cases in addition to those previously cited may be referred to as in principle supporting this result. *Keefe* v. *Lexington & Boston Street Railway*, 185 Mass. 183. *Selectmen of Clinton* v. *Worcester Consolidated Street Railway*, 199 Mass. 279. *Brooklyn Union Gas Co.* v. *New York*, 188 N. Y. 334. *Bethlehem City Water Co.* v. *Bethlehem*, 253 Penn. St. 333.

The order sustaining the demurrer must be

*Affirmed.*