SOPHIE RODIE *v.* NATIONAL SURETY CORPORATION

INGLIS, C. J., O'SULLIVAN, WYNNE, DALY and MELLITZ, Js.

Argued November 2—decided December 13, 1955

*Albert L. Coles,* with whom, on the brief, was *James J. O'Connell,* for the appellant (plaintiff).

*Frederick L. Comley,* for the appellee (defendant).

O'SULLIVAN, J. On November 28, 1951, the plaintiff, after buying an Oldsmobile sedan, applied to John A. Greenwood, an insurance agent in Bridgeport, for liability insurance on the automobile under the Connecticut Assigned Risk Plan. Greenwood forwarded the application to the New York office of that organization, and there it was assigned to the defendant for coverage. Pursuant to its regular business practice, the defendant turned the application over to its employee, Mrs. Loraine Burbank, for rating and final processing. On December 4 or 5, the defendant mailed to the plaintiff at her home the letter which is recited in full in the footnote.[1] The plaintiff received and read it late in the afternoon of December 5. During the evening of that day, her seventeen-year-old son asked for and received permission from her to take the Oldsmobile to a

---

[1]                                                    "December 5, 1951

Mrs. Sophie Rodie
405 Woodside Avenue
Bridgeport, Connecticut

Dear Mrs. Rodie:

| | | |
|---|---|---|
| Policy No. | — | AP 706150 |
| Annual premium | — | $125.20 |
| Deposit paid | — | 37.56 |
| Balance due | — | $87.64 |
| Balance must be received prior to | — | December 21, 1951 |

In accordance with the rules of the Automobile Assigned Risk Plan of your State, we have issued an automobile policy in your name meeting requirements for statutory limits for Bodily Injury and Property Damage liability.

Your deposit has been applied to the annual premium. The balance of premium due the company should be received in this office on or before the due date shown above.

If such premium is not received by that date, or if the risk is other-

school basketball game. While he was driving to the game, he was involved in an automobile accident.

Within a few days after December 5, Greenwood received the policy which the defendant had issued to cover the Oldsmobile. By its terms, the policy became effective at 12:01 a.m. on December 6, 1951. It had been prepared in accordance with the regulations of the Connecticut Assigned Risk Plan. One of the regulations provided that the designated insurer, upon receipt of notice that an application has been assigned to it, "shall, within two working days . . . [i]ssue a policy or binder if all information necessary for the [insurer] to fix the proper rate is contained in the application form, such policy to become effective 12:01 A.M. on the day following the second working day." The court found no fraud, actual or constructive, or any inequitable conduct on the part of the defendant in the process of issuing the policy. On March 5, 1952, Luigi Iannelli, the person who had been injured in the accident occurring on the preceding December 5, brought suit against Mrs. Rodie and her son to recover damages for the injuries sustained. Subsequently, Mrs. Rodie instituted the present action to obtain a decree reforming the defendant's policy so that its effective date would be December 5, 1951. She has abandoned all other claims for relief sought in her complaint.

---

wise ineligible, we shall be obliged to cancel your policy. It is to your interest to pay the balance of premium promptly.

Very truly yours,

/S/ Loraine Burbank

LB/jc

cc: Mr. John A. Greenwood
 58 Horace Street
 Bridgeport, Conn.

 Connecticut Auto Assigned Risk Plan
 107 William Street
 New York, New York"

Our problem, then, is quite limited. We are not concerned with a situation where Mrs. Rodie might seek, let us say, by estoppel, to hold the defendant liable under the policy, as written, for any judgment which may be rendered against her in the action brought by Iannelli. The question presented by this appeal is whether the court was correct in refusing to order a reformation of the policy as issued. The answer is obviously in the affirmative. If, by reason of mutual mistake or by reason of a unilateral mistake which is coupled with fraud or inequitable conduct on the part of the other party, a written agreement does not express the true intent of the parties, the agreement may be reformed. *Patalano* v. *Chabot,* 139 Conn. 356, 359, 94 A.2d 15; *Milford Yacht Really Co.* v. *Milford Yacht Club, Inc.,* 136 Conn. 544, 548, 72 A.2d 482; *Home Owners' Loan Corporation* v. *Stevens,* 120 Conn. 6, 10, 179 A. 330; *Back* v. *Peoples National Fire Ins. Co.,* 97 Conn. 336, 340, 116 A. 603; 3 Pomeroy, Equity Jurisprudence (5th Ed.) p. 384. In the case at bar, there was neither mutual mistake nor a unilateral mistake by Mrs. Rodie which was coupled with fraud or inequitable conduct on the defendant's part. Under such circumstances, reformation was legally impossible, and the court was correct in refusing to grant that relief.

There is no error.

In this opinion the other judges concurred.