THE NEW HAVEN WATER COMPANY *v.* THE MAURO CONSTRUCTION COMPANY

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Submitted on briefs November 6—decided December 27, 1956

*Franklin Coeller,* on the brief for the appellant (defendant).

*Donald F. Keefe* and *John J. Pentz, Jr.,* on the brief for the appellee (plaintiff).

WYNNE, J. This action was brought by the plaintiff, a public utility company supplying water, to recover a balance claimed to be due from the defendant, a building contractor, on five contracts entered into between them for the extension of water mains. The defendant denied any obligation under the contracts on the ground that they were illegal and were entered into by it under protest and duress. In a counterclaim it demanded that the contracts be canceled and that the plaintiff be required to repay the sums already paid to it by the defendant under them. The court rendered judgment for the plaintiff on its complaint and on the counterclaim, and the defendant has appealed. The case was submitted on briefs.

The following facts are either admitted in the pleadings or appear from so much of the finding as is not subject to attack. For about twenty years the defendant has been engaged in the general contracting business. In East Haven it planned and built the Glenmoor project, which contains a number of homes for families of low and moderate income as defined by § 436d (t) of the 1955 Cumulative Supplement to the General Statutes. Included in the development are five principal streets: River Street,

Manor Road, Glenmoor Drive, Warwick Lane and Nicholas Drive. The plaintiff supplies water to areas in and around New Haven, including the Glenmoor development. Along route 80, to the west of the development, is a four-foot main which lies about 1600 feet from the first house on River Street. The distance from the main to the other streets in the development is farther. To secure the extension of water mains into the development, the parties entered into five "Agreement[s] for Water Main Extension[s]" which guaranteed annual minimum returns as follows: for Manor Road, $287.97; for River Street, $1081.20; for Glenmoor Drive, $1582.66; for Warwick Lane, $337.42; for Nicholas Drive, $917.72. These amounts were established in accordance with published rules and regulations for the installation of water mains in real estate developments which had been filed by the plaintiff with the public utilities commission. In each of the ten years succeeding the installation of the service, the stated amount was to be paid, in semiannual instalments, "less such amounts as shall have been paid to [the plaintiff] during said six months' period, at prevailing rates, for water sold on the line of said extension, including [the defendant's] payments." Each contract also required the defendant to deposit with the plaintiff, or give a bond for, an amount equal to the yearly guarantee. By the terms of the contracts and the regulations, the defendant was not entitled to a return of any deposit until the termination of the contract requiring that deposit. The amount of the guarantee in each of the contracts was based upon the estimated cost of laying the water main extension provided for in it. In the event that the actual cost in any instance was less than the estimated cost, an adjustment on the basis of actual cost was to be

made. Because it was necessary for the defendant to have the plaintiff agree to extend its mains into the Glenmoor development in order to complete some arrangements with the state of Connecticut for housing for veterans and eligible persons in a low income bracket, the defendant made application to the plaintiff for the extension of water mains on a street-by-street basis in the Glenmoor development.

The appeal presents two questions for determination. The first is whether the plaintiff had the right to require, by contract, payments from the defendant for the extension of water mains into the Glenmoor development. It is to be noted at the outset that the payments required under the contracts were for the purpose of guaranteeing annual minimum returns and that the stipulated periodical payments would be reduced by the amounts received from those who bought the houses to be erected and who paid the water company for service to those houses. As has previously been pointed out, the defendant was required to place deposits with the plaintiff to be held pending the expiration of the period of the guarantees. The defendant argues that the charter of the plaintiff placed upon it the duty of providing water to Glenmoor without making a charge, as it did, for each extension into the development. It is true, as claimed by the defendant, that the plaintiff has the duty of supplying water within the area where its charter grants it the privilege of doing so. General Statutes § 5410; 4 Spec. Laws 1369, as amended; 6 Spec. Laws 91. This does not mean, however, that a public utility company such as the plaintiff must provide a service without a reasonable payment therefor. Every public utility company is entitled to a fair return upon the fair value of the property used in providing its service. *Cedar Island*

*Improvement Assn.* v. *Clinton Electric Light &*
*Power Co.,* 142 Conn. 359, 370, 114 A.2d 535; *Levitt* v.
*Public Utilities Commission,* 114 Conn. 628, 631,
159 A. 878. The trial court was correct in conclud-
ing that the plaintiff was not required to put in the
extensions without charge and that the contracts
were not in violation of its charter and therefore
illegal.

The next question for consideration is whether, in
this action, the defendant can question the reason-
ableness of the amounts fixed by the contracts. It
appears that the plaintiff's established charges for
extensions had been placed on file with the public
utilities commission. The defendant could have
questioned their reasonableness in an administra-
tive proceeding before that commission under § 5410
of the General Statutes. There is nothing in the
finding or in the additional facts which the defend-
ant claims should have been found to show that the
administrative remedy was either inadequate or in-
appropriate. Under the circumstances, the reason-
ableness of the amounts charged for the extensions
cannot be questioned in a collateral proceeding such
as this. *Levitt* v. *Public Utilities Commission,* supra,
634; see *Far East Conference* v. *United States,* 342
U.S. 570, 573, 72 S. Ct. 492, 96 L. Ed. 576; *Boston* v.
*Edison Electric Illuminating Co.,* 242 Mass. 305, 311,
136 N.E. 113; *Purcell* v. *New York Cent. R. Co.,* 268
N.Y. 164, 172, 197 N.E. 182; *New England Tele-*
*phone & Telegraph Co.* v. *Kennelly,* 75 R.I. 422, 431,
67 A.2d 705. The requirement that a deposit be
posted in order to secure the extension of a public
utility service is neither unreasonable nor illegal.
See *Board of Water Commissioners* v. *Bloomfield,*
84 Conn. 522, 529, 80 A. 794.

The conclusions of the court that the plaintiff was

within its rights in requiring the deposits, that the contracts were legal and enforceable, and that the defendant could not, in this action, challenge the reasonableness of the rates charged, were correct.

The defendant complains of certain rulings on the exclusion of testimony. These need no comment other than that the questions propounded by the defendant dealing with the reasonableness of the amounts charged by the plaintiff were properly excluded for the reasons hereinbefore stated.

There is no error.

In this opinion the other judges concurred.