THE SEYMOUR WATER COMPANY *v.* PAUL J. HORISCHAK ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued February 6—decided April 24, 1962

*John L. Collins,* with whom were *Cleaveland J. Rice, Jr.,* and, on the brief, *Charles M. Lyman,* for the appellants (defendants).

*Charles J. Parker,* with whom, on the brief, was *Peter C. Dorsey,* for the appellee (plaintiff).

SHEA, J. The plaintiff sued to recover an alleged unpaid balance on a promissory note. In their answer, the defendants admitted the execution of the note but pleaded that they had insufficient knowledge to form a belief regarding the amount due. They also filed a counterclaim, claiming as relief (1) a cancelation of any further indebtedness under the note described in the complaint, (2) an accounting, (3) a judgment against the plaintiff for any money paid in excess of the defendants' proper liability to the plaintiff under certain contracts, and (4) such other and further relief as may pertain to equity. A demurrer to the counterclaim was sustained. The plaintiff moved for summary judgment and filed a supporting affidavit. A counter affidavit filed by the defendants was found by the court to be insufficient to entitle them to defend, and on June 30, 1961, the court rendered summary judgment for the plaintiff on the complaint. On September 29, 1961, on motion of the plaintiff, the court rendered judgment for the plaintiff on the counterclaim because of the failure of the defendants to plead over after the demurrer to the counterclaim had been sustained. In the meantime, on September 11, 1961, the defendants had appealed from the summary judgment on the complaint. After the rendition of judgment on the counterclaim, they gave notice, under § 403 of the Practice Book, of their intention to include, in their appeal, an appeal from the judgment on the counterclaim. They then filed an amendment to their assignment of errors, claiming that the court erred in rendering judgment for the plaintiff on the complaint and

on the counterclaim and in sustaining the demurrer to the counterclaim.

The principal question for determination is the correctness of the ruling on the demurrer. In the first count of the counterclaim, the defendants alleged the following facts: The defendants owned a real estate development in Seymour. They entered into a contract with the plaintiff to obtain a supply of water for the development. Another developer who owned land in the vicinity was also a party to the agreement. The contract required the construction by the plaintiff of a high-level water-main system consisting of an extension of existing water mains, a new booster-pump station and a new standpipe. The expense of the work, including the cost of the land to be bought for the booster-pump station and the standpipe, was to be initially apportioned among the plaintiff, the defendants and the other developer. Ultimately, the expense was to be borne by those who would derive benefit from the installation. The defendants agreed to advance to the plaintiff, as an aid in the construction of the system, a specified sum payable in instalments. Charges for certain new connections were specified in the contract, while charges for other types of connections were to be fixed by the parties. Out of the income derived from these new connections, the plaintiff agreed to accumulate for the developers a refund account, for which an annual accounting was to be made. Contemporaneously with the execution of this first contract, the parties entered into a second contract, by which the plaintiff agreed to instal water mains in the defendants' development to provide home buyers with water obtained from the high-level system. The second contract required the defendants to advance a part of the

cost of installation and to guarantee to the plaintiff a certain amount of revenue annually for ten years. Income received from customers in the development was to be applied first on the guarantee, then on the advance made by the defendants under the second contract, and thereafter on the advance made under the first contract.

The counterclaim further alleged that the note described in the complaint was executed and delivered to the plaintiff when the defendants were unable to pay the balance on the advances specified in the first contract; that at the time the contracts were made, the construction of the high-level system was then necessary to provide adequate volume and pressure of water and adequate fire protection for the plaintiff's existing customers; that the plaintiff did not disclose to the defendants the already existing need for the construction of the high-level system; that at the time the contracts were executed, the defendants understood and believed that all of the construction work described in the first contract was necessary in order to obtain water for their own development and that none of the work was designed for the benefit of anyone else; that the plaintiff knew or should have known from the course of business dealings between the parties that the defendants had this belief and understanding, but the plaintiff did nothing to advise the defendants of the existing and true facts; that the construction of the high-level system was an obligation resting exclusively on the plaintiff and therefore it was required to invest all the necessary capital to provide existing customers with adequate service; that, had the defendants known the true state of facts, they would not have executed the first contract as drafted but would have limited the liability

assumed by them to the actual cost of the service provided for their own development under the second contract. The defendants alleged, in addition, that the plaintiff had permitted certain connections to be made in violation of the first contract; that the plaintiff had been unjustly enriched at their expense; that it had charged the defendants with liability for the cost of installations designed for the benefit of others; that the defendants had been required to pay substantial sums in excess of the amount properly demandable for their own supply of water; and that the plaintiff had refused to comply with a request by the defendants to terminate the contract or modify or limit the defendants' liability to the plaintiff.

The counterclaim contained a second count, in which the defendants, after repeating some of the paragraphs of the first count, averred that the high-level system was designed and planned by the plaintiff to provide service for future customers outside of the developments named in the contract; that the construction of the high-level system was the exclusive obligation of the plaintiff, which, as a public utility company, was required to use its own capital to provide adequate service for future customers; and that the contract imposed a hardship on the defendants. It should be noted here that the first count related to the obligations of the plaintiff to furnish the capital required to supply adequate service to its existing customers, while the second count related to the plaintiff's obligation to furnish capital to provide adequate service for future customers.

The plaintiff demurred to the first count of the counterclaim "insofar as it sets forth the causes of action for monies paid in excess of an amount prop-

erly demandable by a public utility company because such a claim must be addressed in the first instance to the Public Utilities Commission." The plaintiff demurred to the second count because "it purports to set forth a cause of action for recovery of amounts paid by defendant under a contract with a public utility company and such a claim properly must be addressed in the first instance to the Public Utilities Commission."

The plaintiff claims, in support of the demurrer, that the legislature, by the enactment of § 16-20 of the General Statutes, has delegated to the public utilities commission the authority, in the first instance, to pass upon the reasonableness of rates, including charges for the extension of service. This statute provides that if any public service company unreasonably fails or refuses to furnish adequate service at reasonable rates to any person within the territorial limits within which the company has authority to furnish such service, such person may bring a written petition to the commission alleging the failure or refusal. If, after a hearing, the commission finds the allegations of the petition to be true, it may prescribe the service to be furnished and the conditions under which and the maximum rates or charges at which the service shall be furnished. The statute applies only when the public service company unreasonably fails or refuses to furnish adequate service at reasonable rates. In the present case, the defendants do not allege in the counterclaim any such failure or refusal. In effect, they allege that they were induced to enter into a contract wherein they were required to advance funds, as capital, to construct a high-level water system, when the plaintiff was already under an obligation, as a public utility, to construct such a

system because the service was not then adequate to meet the existing requirements of the plaintiff's customers; that the plaintiff knew or ought to have known that the defendants were unaware of this existing need; that notwithstanding these facts the plaintiff failed to disclose the true situation to the defendants; and that, had the defendants known the actual facts, they would not have executed the contracts as drafted.

The defendants rely on the doctrine of unilateral mistake and inequitable conduct on the part of the plaintiff in bringing about the execution of the first contract. The pleadings would allow evidence of facts which, if proved, would entitle the defendants to equitable relief. *Rodie* v. *National Surety Corporation,* 143 Conn. 66, 69, 118 A.2d 908; Restatement, Restitution § 8; id., 2 Contracts § 472. The claims advanced by the defendants are inextricably connected with the note which is the subject matter of the complaint. Where this situation occurs, the controversy, wherever possible, should be disposed of in one proceeding. Ordinarily, a court of equity which has obtained jurisdiction of a controversy will retain jurisdiction for the purpose of administering complete relief. *Clipfel* v. *Kantrowitz,* 143 Conn. 184, 188, 120 A.2d 416; *Maruca* v. *Phillips,* 139 Conn. 79, 82, 90 A.2d 159. If we assume, without deciding, that the public utilities commission would have jurisdiction to entertain the claims made by the defendants, the jurisdiction provided under § 16-20 is not exclusive. *Steele* v. *Clinton Electric Light & Power Co.,* 123 Conn. 180, 187, 193 A. 613. The case is clearly one where the court, having once acquired jurisdiction, should retain it as to the whole controversy so as to effectuate a proper and full adjudication of the rights of the

parties. The court erred in sustaining the demurrer. Because of that error, the plaintiff was not entitled to summary judgment on the complaint.

The plaintiff relies on the case of *New Haven Water Co.* v. *Mauro Construction Co.*, 144 Conn. 195, 128 A.2d 531, which is readily distinguishable from the present case. That case dealt with the right of the water company to require payments for extending water mains into a development and the reasonableness of the amounts charged for the extensions. The case has no application where, as here, the controversy arises because of an alleged unilateral mistake coupled with inequitable conduct of a party to a contract. Moreover, in the present case, the defendants have alleged a basis for the recovery of damages for breach of contract.

There is error, the judgments are set aside and the case is remanded with direction to overrule the demurrer and then proceed according to law.

In this opinion the other judges concurred.