[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to this court on a support petition filed by the Department of Social Services pursuant to General Statutes §46b-172[1]. The petition is brought on behalf of the named plaintiff Jackie Morales. The petition does not state her interest in the matter other than by inference that she is the child's "custodian". The attached "verified statement of facts" identifies the child who is the subject of this matter as Jalexie Rios, born on "04-21-00" and identified as "acknowledged child." The defendant is alleged to be the child's father. An uncertified photocopy of the front side of a purported acknowledgment of paternity was attached to the support petition and marked "exhibit A" although neither the petition nor the verified statement makes any reference to it. From the photocopy an inference could be drawn that the named plaintiff is Jalexie's mother[2].
When the matter came to court on September 25, 2000 the defendant appeared by counsel and the plaintiff appeared pro se. The parties exchanged financial affidavits and a child support guidelines worksheet was prepared. When the matter came before the court, however, they were not in agreement. The defendant claimed a qualified child deduction but needed a continuance to provide documentation. The defendant's attorney also reported that he planned to file a motion to open the paternity acknowledgment. The court inquired as to whether a court-filed acknowledgment existed or whether the State was prepared to file the CT Page 1381 original acknowledgment or a certified copy or duplicate original.Cintron v. Valentin, superior court, judicial district of New Britain, doc. no. FA99-0498286 (May 17, 2000, Dranginis, J.); Gonzalez v. Alers, 14 S.M.D. ___ (2000). When the State responded in the negative the court appointed Attorney Leonard Shankman as guardian ad litem for the child[3]
and continued the case to November 27.
Days later the defendant filed his motion to open the judgment, which was duly served on the plaintiff and the State. The clerk's office assigned the motion for October 18 but the court, Reynolds, F.S.M. continued the matter apparently to accommodate the Attorney General. Ultimately the case was bifurcated with the motion to open scheduled for trial on the special assignment docket of January 21, 2001 while the State's support petition and a separate motion for support filed by Attorney Shankman for the child was scheduled for November 27, 2000.
On the day of the support hearing the court file still did not contain an original, duplicate original or certified copy of an acknowledgment of paternity. The State indicated that the original had been filed with the Department of Health but was unable to produce a certified copy. Attorney Shankman volunteered to obtain one on behalf of the child and requested that the case be passed to the same afternoon. When the certified copy was produced the court directed it to be filed in the court file and proceeded to a hearing on support issues. After a full hearing the court entered a support order of $145.50 per week current support plus $14.50 per week on an arrearage of $3,076.00 to the named plaintiff as well as ancillary orders for medical insurance, payment of uninsured medical costs and day care.
The remaining issue is the defendant's motion to open. A full hearing was held before this court. For the reasons hereinafter stated the motion to open is denied.
 I — DURESS
The paternity acknowledgment statute precludes review after sixty days or upon entry of a support order. The section provides that after this period of time the acknowledgment "may be challenged in court or before a Family Support Magistrate . . . only on the basis of fraud, duress or material mistake of fact which may include evidence that he is not the father. . . ." General Statutes § 46b-172(a)(2); Veilleux v. Burski, 14 S.M.D. ___ (2000, Langley, F.S.M); White v. Cordier, 14 S.M.D. ___,27 Conn. L. Rptr. 365 (2000).
According to the certified copy both parents executed the acknowledgment on April 22, 2000 — the day after Jalexie was born. CT Page 1382 The statute of limitations ran out on June 21, 2000. Therefore the court is precluded from opening the acknowledgment unless the defendant proves fraud, duress or mistake.
The defendant alleges the following reason to open the judgment: "Acknowledgment of paternity signed at hospital at insistence of plaintiff not true. Signed only to appease the birth mother. Defendant has a genuine question as to paternity and desires testing." There is no claim of fraud or mistake. The only ground claimed by the motion is duress.
"The court does have jurisdiction to open a stipulated judgment, on a motion, even after the [time limitation] has elapsed if the movant can show that the judgment was obtained by fraud, duress, accident or mistake." Yeong Gil Kim v. Magnotta, 49 Conn. App. 203, 209, 714 A.2d 38
(1998); Solomon v. Keiser, 22 Conn. App. 424, 577 A.2d 1103 (1990);McDonnell v. McDonnell, Superior Court, judicial district of Hartford, doc. No. FA94-0535761 (February 2, 1999, Bishop, J.). The judgment occasioned by an Acknowledgment of Paternity is essentially a stipulated or consent judgment.
Some courts have recognized a slightly differing standard in opening a judgment entered by consent compared to those resulting from adjudication. Gillis v. Gillis, 214 Conn. 336, 572 A.2d 323 (1990). In the case of stipulated judgments, contract principles pertinent to reformation are sometimes invoked. Rodie v. National Surely Corporation,143 Conn. 66, 69, 118 A.2d 908 (1955); Shawmut Bank Connecticut v.Connecticut Limousine Service, Inc., 40 Conn. App. 268, 273, 670 A.2d 880
(1996); City Iron Works, Inc. v. Frank Badsteubner Post No. 2090,22 Conn. Sup. 230, 167 A.2d 462 (1960). A motion to open a judgment, if "grounded on mistake or duress, necessarily requires the court to make a factual determination before it can exercise its discretion to grant or deny the motion. . . ." Stamford Housing Authority v. Lamothe,225 Conn. 757, 769, 627 A.2d 367 (1993); Cromwell Commons Associates v.Koziura, 17 Conn. App. 13, 17, 549 A.2d 677 (1988).
In making its factual determination whether a stipulated judgment should be opened, the court must inquire into whether the decree itself was obtained by fraud, duress, accident or mistake. ConnecticutPharmaceutical Assn., Inc. v. Milano, 191 Conn. 555, 558, 468 A.2d 1230
(1983); Celanese Fiber v. Pic Yarns, Inc., 184 Conn. 461, 466, 440 A.2d 159
(1981); Kenworthy v. Kenworthy, 180 Conn. 129, 131, 429 A.2d 837 (1980).
The principles that govern the opening of a stipulated judgment on the ground of duress are not in dispute. Our law vests discretion in the trial court to determine whether a judgment should be opened for cause. CT Page 1383 "To conclude that a stipulated judgment resulted from duress, the finder of fact must determine that the misconduct of one party induced the party seeking to avoid the stipulated judgment to manifest assent thereto, not as an exercise of that party's free will but. because that party had no reasonable alternative in light of the circumstances as that party perceived them to be. See McCarthy v. Taniska, 84 Conn. 377, 381-82,80 A. 84 (1911); 1 Restatement (Second), Contracts § 175, especially comment b (1981)." Jenks v. Jenks, 232 Conn. 750, 753, 657 A.2d 1107
(1995); Sicaras v. City of Hartford, 44 Conn. App. 771, 789, 692 A.2d 1290
(1997).
The classical or common law definition of duress is "any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition." 25 Am.Jur.2d, Duress and Undue Influence 1 (1966). Inherent in the term is an implication of feebleness on one side and overpowering strength on the other. United States v.Bethlehem Steel Corp., 315 U.S. 289, 300, 62 S.Ct. 581, 86 L.Ed. 853
(1941). The duress must be imposed on the defendant at or about the time the defendant enters into the contract. 25 Am.Jur.2d, Duress and Undue Influence 14; see Shlensky v. Shlensky, 369 Ill. 179, 183, 15 N.E.2d 694
(1938). To show duress, one must prove [1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim. 2 D. Dobbs, Law of Remedies (2d Ed. 1993) c. 10, § 10.2(1), p. 635.
From the testimony of both parties the court finds the following facts. On the day the plaintiff gave birth to Jalexie she paged the defendant and asked him to come to the hospital. He complied. During their discussions the plaintiff asked him to acknowledge the child. The defendant agreed to do so but the form was not completed because no one was present to notarize the document. On the following day the defendant returned to the hospital and both parties executed The acknowledgment form.
The plaintiff did not threaten the defendant. She did not tell him that he must sign the form. The defendant asked about having a "blood test"[4]. The plaintiff said she would have no problem with having a "blood test". She did suggest that it would be bad for the child to leave the hospital without having a name or being acknowledged. The defendant read the acknowledgment form including the waivers before signing.
Even though the defendant admits that Ms. Morales never threatened him he claims that he felt "pressured" to sign the form. He raised the issue of a "blood test" but claims he signed under the assumption that he could CT Page 1384 have such tests later. Yet he admits that he read and understood the entire acknowledgment form which includes clear warning that the document is legally binding and that the signatory waives genetic tests. The defendant, who is a police officer, clearly understood that he was not compelled to sign the form, but that by doing so he waived his rights to contest the paternity.
Moreover, the defendant took no action to rescind the acknowledgment within the sixty day allowed by law. In fact, on July 28, 2000, more than ninety days later, he signed an agreement to pay support for Jalexie and establish a visitation schedule.
Simply stated, the defendant has failed to prove any of the elements of duress. There was no wrongful act or threat by the plaintiff. He was not placed in a position of having no reasonable alternative. He was not placed at an unfair disadvantage or deprived of his free will. To the contrary he could have walked away at any time, or simply declined to sign until genetic tests were done. At best the plaintiff made a few mildly persuasive comments. At most the defendant had some vague discomfort. "A stipulated judgment . . . is not voidable on the ground that it was accepted with reluctance, so long as its procurement was not the result of fraud, duress, or mistake." Sparaco v. Tenney, 175 Conn. 436,437-38, 399 A.2d 1261 (1978); Bryan v. Reynolds, 143 Conn. 456, 460-61,123 A.2d 192 (1956); Shaw v. Spelke, 110 Conn. 208, 215, 147 A. 675
(1929).
 II — CHILD'S INDEPENDENT INTEREST
"Connecticut has long recognized that children have a separate and independent interest in family relations matters. In re Bruce R.,234 Conn. 209-210; Nye v. Marcus, 198 Conn. 138, 502 A.2d 869 (1985);Guille v. Guille, 196 Conn. 260, 492 A.2d 175 (1985); Salvio v. Salvio,186 Conn. 311, 441 A.2d 190 (1982); Yontef v. Yontef, 185 Conn. 275,440 A.2d 899 (1981)." Martinez v. Collins, 15 S.M.D. ___ (2001). A child's "interest in establishing paternity is a fundamental state and federal constitutional liberty interest [which] the judicial system must afford the child an opportunity to exercise and protect. . . ."Andrews-White v. Mitchell, 15 Conn. L. Rptr. 629, 1995 Ct. Sup. 12880
(McWeeny, J. Nov. 13, 1995); Taylor v. Martin, 14 S.M.D. ___,26 Conn. L. Rptr. 404 (2000); see also Johnson v. Domina, Superior Court, Judicial District of Hartford, doc. No. FA88-0340848,1998 Ct. Sup. 11005 (Sep. 24, 1998, Dranginis, J.).
A guardian ad litem was appointed for Jalexie in order to protect her independent interest. "Substantial weight is given the opinion of the child's counsel and guardian ad litem." Joseph v. Lilburn, 14 S.M.D. ___ CT Page 1385 (2000); see also Shelby v. Shelby, 13 Conn. L. Rptr. 130 (1994). Here, the guardian ad litem actively participated in the hearing and strongly opposed opening the judgment.
 III — THE INTEREST OF THE STATE OF CONNECTICUT
The Attorney General opposes the motion. "There is no doubt that the State of Connecticut has an interest which would be prejudiced by opening the judgment." White v. Cordier, 14 S.M.D. ___, 27 Conn. L. Rptr. 365
(2000); McNealy v. Dancy, 13 S.M.D. 113, 115, 1999 Ct. Sup. 12793, 12795 (sub nom. Tiffany M. v. Walter D.) (1999).
Connecticut "evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re BruceR., 234 Conn. 194, 209, 662 A.2d 107 (1995); Joseph v. Lilburn, 14 S.M.D. ___ (2000). Although the State has provided no public assistance for Jalexie it has incurred the cost of establishing paternity and prosecuting this support action. The State's financial interest is not the determining factor but one of many the court must analyze. In the present case Jalexie is an infant and there is relatively little public money expended. Although the State has an interest in preserving the acknowledgment, in this case its interest is not compelling.
 IV — CONCLUSION
A motion to open "is not to be granted readily, nor without strong reasons, it may and ought to be when there appears cause for which the court, acting reasonably would feel . . . bound in duty to do so."McCulloch v. Pittsburgh Plate Glass Co., 107 Conn. 164, 167, 140 A. 114
(1927); Wildman v. Wildman, 72 Conn. 262, 270, 44 A. 224 (1899); McNealyv. Dancy, 13 S.M.D. 113, 122, 1999 Ct. Sup. 12793 (1999).
"Courts do not unmake bargains unwisely made. Absent other infirmities, bargains moved on calculated considerations, and whether provident or improvident, are entitled nevertheless to sanctions of the law." Tallmadge Bros. v. Iroquois Gas Transmission System, 252 Conn. 479,506, 746 A.2d 1277 (2000); Robert Lawrence Associates, Inc. v. DelVecchio, 178 Conn. 1, 21-22, 420 A.2d 1142 (1979).
The defendant admits that when Jalexie was conceived although he was married to another woman he had sexual intercourse with the plaintiff. He also admits that he had sexual relations with other women at this time. He believes that the plaintiff at the time "had a boy friend" and that the sexual relationship was not exclusive for her either.
However, the plaintiff testified at the hearing that she did not have CT Page 1386 sexual intercourse with anyone other than the defendant during the possible period during which Jalexie was conceived. She denies ever naming anyone else as Jalexie's father. She has remained constant in her accusation.
The defendant is intelligent, articulate and careful. His professional training and experience give him more than a layman's understanding of the import of a waiver of rights and the execution of a legal document. There is simply no credible evidence of unfairness in any aspect of the establishment of this paternity, nor of a different result if the judgment were opened. This court has concern with the accuracy of any paternity determination taken without genetic tests. Palomba v. Gray,208 Conn. 21, 36-37, 543 A.2d 1331 (1988); Joseph v. Lilburn, 14 S.M.D. ___ (2000). The reduction of the former review period of three years to the present sixty days seems dangerously compressed, especially given the myriad emotions that attend most people on the birth of a child and the fact that often these acknowledgments are signed by young, impressionable and immature adolescents.
However, to open the acknowledgment in this particular case would render the acknowledgment statute meaningless. This defendant had every reason to know exactly what he was doing when he signed. He had every reason to know that any possibility of recision or review expired in sixty days. Instead of initiating a review, he negotiated a support and visitation agreement. If this defendant has an issue, it is with the statute. Any remedy lies with the legislature, not with the court.
For the reasons stated, the motion to open the judgment is denied. The defendant shall pay costs including the fee of the guardian ad litem.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate