[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant has filed a Motion to Reopen Judgment, dated June 19, 1995, seeking to vacate an acknowledgment of paternity filed with the court pursuant to Connecticut General Statutes Section 46b-172. The matter was continued for an evidentiary hearing, which was held on July 31, 1997, and continued on to September 11, 1997. On September 11, 1997, this court ordered the parties to submit to genetic testing, and the State appealed, seeCardona v. Negron, 53 Conn. App. 152 (1999). The parties returned on July 22, 1999, and presented additional evidence regarding whether the court should open the judgment.
By clear and satisfactory evidence, the court finds the following facts based on the reliable and credible testimony. In September of 1988, the plaintiff and defendant met and began dating. At the time, the defendant was seventeen years old and just beginning his senior year in high school. Shortly thereafter, the parties began to have sexual relations.
In May of 1989, the plaintiff conceived a child, Justin, the subject of this Motion. By her words and actions, the plaintiff represented to the defendant that he was the father of her child. The defendant relied upon her words and never denied, prior to or at the time of the birth of Justin, that he was the child's father.
In June of 1989, the defendant graduated from high school. During the following weeks after graduation, the parties began to live together. The defendant gradually moved his belongings from his mother's home to the home of the plaintiffs sister, Alma Cardona, where the plaintiff resided.
The plaintiffs testimony regarding when the parties moved in together was vague, in that she only claimed that they began living together sometime between September and December of 1988. CT Page 10848 The court finds her vague recollection not credible. Her sister Alma Cardona's testimony regarding that issue was also vague and not persuasive.
The parties resided together for several months during the plaintiffs pregnancy at Alma Cardona's home until late 1989, when both parties returned to live with their respective parents. The child was born on February 6, 1990. The defendant was present at the hospital at the time of the child's birth. Some two months later, the parties again began to live together. The defendant gave the plaintiff an engagement ring, but the plaintiff wished to wait some time before getting married.
After meeting with representatives of the Department of Social Services, the defendant signed an acknowledgment of paternity on July 30, 1990, in which he acknowledged that Justin Negron, born February 6, 1990, was his child. That acknowledgment was filed with the court on August 3, 1990. In accordance with C.G.S. Section 46b-172, judgment of paternity entered.
In approximately March of 1991, the plaintiff again became pregnant. The parties were living together at the time and remained together until July of 1991. At that time, the defendant left their apartment due to the plaintiffs excessive periods away from the household and the furthermore, because the parties were not getting along. The plaintiff never told the defendant that she was pregnant while they were living together. A second child, Chelsea Negron, was born on or about December 21, 1991. Later, in September of 1994, the Department of Social Services brought a paternity petition on the plaintiffs behalf against this defendant alleging that this defendant was also the father of the plaintiffs child, Chelsea. The defendant moved for and was granted DNA testing. The testing revealed that the defendant was not the father, and judgment entered in his favor on February 21, 1995.
As the parties' relationship began to break down, the defendant began to doubt that he was the father of Justin. In August 1991, during one of the discussions he had with the plaintiff regarding the doubts he had, the plaintiff handed a letter to the defendant. In the letter, the plaintiff indicated that she "would like to deny Gervacio Manuel Negron as being the father of Justin Manuel Negron. I would also like to petition for legal action to take effect in removing Justin's last name." CT Page 10849
A handwriting expert, Clarissa M. DeAngelis, presented credible testimony verifying that by examining the handwriting on a copy of the letter, she concluded that it was authored by the plaintiff. The court finds not credible the plaintiffs testimony that she never wrote the letter.
In November of 1992, the Department of Social Services prepared a Petition for Support which was served on the defendant. Thereafter, on March 9, 1992, the defendant appeared in court pro se to answer the support petition. On that date, the defendant handed to the court the original letter where the plaintiff denied that the defendant was the father of Justin. The defendant never received the original letter back from the court, and the letter is not in the court file. Nonetheless, the court entered a temporary order that the defendant pay child support to the plaintiff for the child Justin. On June 5, 1992, no parties appeared in court, and the orders were made permanent.
While the defendant had growing doubts in his mind regarding the paternity of Justin, it was not until the DNA exclusion of Chelsea in February of 1995, did the defendant become convinced that he was not the father of Justin. The parties had subsequently agreed to have DNA testing for the child Justin; however, the plaintiff failed to keep her appointment for the test and has since refused to undergo genetic testing for Justin.
The defendant has not seen the child, Justin, for several years and there appears to be no parent-child relationship between them.
On June 19, 1995, the defendant filed a motion to open alleging that he had signed the acknowledgment of paternity as a result of the mother being untruthful when she said that he was the father of Justin. Further, the defendant alleges that the mother has admitted and declared that the defendant is not the father of Justin.
Connecticut General Statutes Section 46b-172(c) permits the court to reconsider and review an acknowledgment of paternity within three years of the filing of the acknowledgment and judgment entering. (Now a right of rescission must be filed within 60 days, see P.A. 97-7, June 1997).[1]
"The prior judgment as to paternity shall be res judicata as to that issue for all paternity acknowledgments filed with the CT Page 10850 court on or after March 1, 1981, but before July 1, 1997, and shall not be reconsidered by the court unless the person seeking review of the acknowledgment petitions the superior court for the judicial district having venue for a hearing on the issue of paternity within three years of such judgment." C.G.S. Section46b-172(c).
The defendant's Motion to Open was filed nearly five years after the filing of the acknowledgment. The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence, judgments obtained by fraud may be attacked at any time. Kenworthy vs. Kenworthy, 180 Conn. 129, 131 (1980).
In order to open a judgment, the moving party bears a heavy burden. Fraud must be proven by "clear and satisfactory evidence," a standard more exacting than a fair preponderance of the evidence, Alaimo v. Royer, 188 Conn. 36, 39 (1982); Miller v.Appleby, 183 Conn. 51, 55 (1981). The standard is also sometimes stated as "clear, precise and unequivocal evidence," Bartone v.Robert L. Day Co., 232 Conn. 527, 533 (1995); Lopinto v. Haines,185 Conn. 527, 534, (1981).
The elements of a fraud action are (1) a false representation made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; (4) the other party relied upon the statement to his detriment. Maturo vs. Gerard,196 Conn. 184, 587 (1985), as cited in Billington vs. Billington,220 Conn. 212, 217 (1991).
The plaintiff, through her own words, admitted that she committed a fraud on the defendant. By handing the defendant the letter in 1991 in which she "would like to deny Gervacio Manuel Negron as being the father of Justin Manuel Negron", she admitted that her earlier representations to him regarding the paternity of Justin were false. Additionally, the plaintiffs lack of candor regarding the circumstances of the letter and regarding the dates of that crucial time period of when the parties initially moved in together, clearly leads this court to conclude that she fraudulently and falsely represented to the defendant that he was the father of Justin. By signing an acknowledgment, the defendant relied on her prior assertions and has since paid child support while having no apparent ongoing parent-child relationship, all to his detriment. CT Page 10851
"Although the law will intervene to insure that substantial justice is done where fraud has been perpetrated, the frequency and extent of this intervention must be tempered by a sometimes conflicting adjudicative proposition that mandates the ultimate conclusion of all legal controversy. Thus, the setting aside of a judgment on the basis of fraud `will only be granted if the [movant] is not barred by any of the following restrictions: (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence . . . in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) 11.7, pp. 540-42; [note,] 36 III. L. Rev. 894, 896-97 (1942).' Varley v.Varley, 180 Conn. 1, 4, 428 A.2d 317 (1980)." Jucker v. Jucker,190 Conn. 674, 677 (1983).
The defendant is not guilty of laches. "Laches consists of two elements. `First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant.' Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 685, (1955); . . . The mere lapse of time does not constitute laches;Finucane v. Hayden, 86 Idaho 199, 206; unless it results in prejudice to the defendant; see Leary v. Stylarama of New Haven, Inc., 174 Conn. 217, 219, (1978); Bianco v. Darien,157 Conn. 548, 556, (1969); as where, for example, the defendant is led to change his position with respect to the matter in question. Pukasv. Pukas, 104 R.I. 542, 545-46, (1968)." Bozzi v. Bozzi,177 Conn. 232, 239 (1979), (citations omitted).
While the defendant did receive a letter from the plaintiff in 1991 indicating that he was not the father Justin, he did not become convinced of that fact until DNA testing excluded him as being the father of Chelsea in 1995. Additionally, in 1991, the defendant was not making enough money to hire an attorney to contest Justin's paternity. In June of 1995, after receiving financial assistance from family and friends, he consulted and retained counsel and the Motion to Open was filed. Additionally, there was no showing that any delay on the part of the defendant in bringing this motion prejudiced either the plaintiff or the minor child.
The defendant was diligent in attempting to expose the fraud given his age, education and limited financial resources. While CT Page 10852 appearing pro se in court in 1992, he attempted to introduce the original letter of the plaintiffs to the court's attention. Later, he arranged for DNA testing for Justin and the plaintiff, but did not receive the plaintiffs cooperation and the testing was not completed.
"The right of the child to a conclusive determination of paternity supersedes the need for finality of judgments, and the ease with which a confirming test of paternity can now be determined, requires a conclusive finding of paternity." SeeLillbridge v. Lillibridge, Judicial District of Hartford, Docket Number FA89-356816; 1998 Ct. Sup. 13460 (October 29, 1998, Dranginis, J.) The misrepresentations and lingering doubts created by the plaintiff have also affected a parent-child relationship for Justin. Sadly, the child's well-being and his property rights have been affected due to this conflict.
The allegations of fraud have been proven by clear and satisfactory evidence. The defendant's Motion to Reopen is granted and the acknowledgment of paternity is Ordered rescinded and vacated.
Paul Matasavage, Family Support Magistrate