[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff and the defendant although never married, had a longstanding relationship which lasted over twenty-two years until they separated in 1999. There are four acknowledged children: Palmether Martin, born April 23, 1982; Aliatasha Martin, born March 12, 1983; Andre Earl Martin, born April 4, 1984; and Aaron Harrell, born August 11, 1995. In August 1984 the defendant signed paternity acknowledgments for the three older children, which, together with the plaintiffs CT Page 6996 affirmations, were filed in the geographical area court as provided by the then applicable statute, General Statutes § 52-442a. The defendant also signed an agreement to support whereby he agreed to pay $5.00 per week for each of the three older children plus $5.00 per week on the arrearage. This agreement was approved by the court, Doyle, J., on October 16, 1984.
In February 1996 the defendant signed an acknowledgment of paternity for Aaron. This document together with the mother's affirmation and a signed advisement of rights and waiver form initiated the present file. Simultaneously, the geographical area file, which covered the three older children, was transferred to this court and merged into the same file. No action was taken to modify the support order either to increase the monetary amount or to add Aaron to the support order.
On September 4, 2001, the defendant filed a motion to open the judgment represented by the acknowledgment of paternity for Aaron[1]. He based his motion solely on an alleged statement to him by the plaintiff that the child was not his. The court appointed Attorney Frank Twohill to represent the interests of the minor child. A full evidential hearing was held on the motion. At the hearing, the plaintiff confirmed that she had telephoned the defendant and informed him that he was not Aaron's father. She disclosed that she had an affair with Samuel Aryee, a citizen of Ghana, and that a DNA test done in March, 2000 confirms Mr. Aryee as Aaron's father.[2] The child's attorney and the plaintiff mother support the motion. The State opposes it.
 I FINALITY OF JUDGMENT
Paternity of Aaron Harrell was established through the paternity acknowledgment statute, General Statutes § 46b-172.[3] The statute provides that when an acknowledgment is executed by the father and filed together with affirmation of the mother it "shall be considered a legal finding of paternity . . . and shall be binding on the person executing the same. . . ." General Statutes § 46b-172 (a)(1). The judgment obtained through the acknowledgment can only be opened within three years of filing: "The prior judgment as to paternity shall be res judicata as to that issue for all paternity acknowledgments filed with the court on or after March 1, 1981, but before July 1, 1997, and shall not be reconsidered by the court unless the person seeking review of the acknowledgment petitions the superior court for the judicial district having venue for a hearing on the issue of paternity within three years of such judgment." General Statutes § 46b-172 (c). After the expiration of the statutory period an acknowledgment "may be challenged CT Page 6997 in court or before a family support magistrate . . . only on the basis of fraud, duress or material mistake of fact which may include evidence that he is not the father, with the burden of proof upon the challenger."[4]
Thus the statute attempts to imbue acknowledged paternity with the same degree of finality as adjudicated paternity judgments. It is well established that "[o]ur courts favor finality in judicial decisions."Meinket v. Levinson, 193 Conn. 110, 113, 414 A.2d 454 (1984); Vogel v.Vogel, 178 Conn. 358, 362, 422 A.2d 271 (1979); Perkins v. Perkins,3 Conn. App. 322, 328, 487 A.2d 1117 (1985); Dawkins v. Nash, 15 S.M.D. ___, 7 Conn.Ops. 1302, 2001 Ct. Sup. 14254 (2001); Joseph v. Lilburn, 14 S.M.D. ___, (2000); Tirado v. Rivera, 13 S.M.D. 230, 238,1999 Ct. Sup. 15638
(1999); Yade v. Nagy, 4 S.M.D. 237 (1990); State of Florida v.Backlund, 2 S.M.D. 61, 71 (1988). "Public policy requires that a term be put to litigation and the judgments, as solemn records upon which valuable rights rest should not lightly be disturbed or overthrown. . . ." LampsonLumber Co. v. Hoer, 139 Conn. 294, 297, 93 A.2d 143 (1952); Drakeford v.Ward, 15 S.M.D. ___, 2001 CtSup. 15865 (2001); White v. Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365, 2000 Ct. Sup. 6486 (2000); Pullen v.Cox, 9 S.M.D. 134, 137 (1995). 27 Conn.L.Rptr. 365, 2000 Ct. Sup. 6486
(2000); Pullen v. Cox, 9 S.M.D. 134, 137 (1995).
"The finality of judgment in family matters is crucial to our community's stability." Berry v. Berry, Superior Court judicial district of Hartford/New Britain at Hartford, doc. no. FA91-0391459,1993 Ct. Sup. 22
(Steinberg, J. January 5, 1993); Joseph v. Lilburn, supra, 14 S.M.D. ___. "The need for finality of judgment . . . must apply as much or more to cases where a young child for whom the passage of time which may seem short for an adult or teenager, can be almost an eternity to an infant and work changes with substantial and irreversible effect." In re KellyS., Superior Court juvenile matters, judicial district of Windham at Willimantic, doc. no. N90-159, 1991 Ct. Sup. 10450, 10464 (Teller, J. Dec. 5, 1991); In re Nathan and Michael G., Superior Court juvenile matters, judicial district of Windham at Willimantic, 1993 Ct. Sup. 9953, 9967 (Brenneman, J. Nov. 17, 1993); In re Mark and Amy C., Superior Court juvenile matters, judicial district of New London at Montville,1991 Ct. Sup. 7960, 10464 (R. Walsh, J. Sept. 24, 1991); In re Jesus Lugo, Superior Court juvenile matters, judicial district of Hartford/New Britain at Plainville, 1990 Ct. Sup. 878, 887 (Brenneman, J. Aug. 24, 1990.
The importance of the principle of finality of judgment is amplified when the parties had full opportunity originally to contest the issues.Meinket v. Levinson, 193 Conn. 110, 114, ___ A.2d ___ (1984); Monroe v. Monroe, 177 Conn. 173, 178,413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 CT Page 6998 S.Ct. 20, 62 L.Ed.2d 14 (1979); Mauriello v. Mauriello,1992 Ct. Sup. 4774, Superior Court judicial district of Waterbury, doc. no. 84337 (May 29, 1992, Harrigan, J). In this case, the file contains a signed information form which includes, inter alia, the following: "If you are not sure you are the father of the child, you do not have to acknowledge paternity. You have the right to refuse to admit paternity and have a trial at which you could be represented by an attorney." The form includes a specific waiver of a genetic test trial and an attorney.
In family matters as in criminal cases, the principal of finality of judgment must be balanced against other interests, such as assuring that no party will be deprived of constitutional rights, or achieving a factually accurate as well as a fair result. Asherman v. State,202 Conn. 429, 521 A.2d 578 (1987). Although our statutes invest a properly executed paternity acknowledgment with the "same force and effect as a judgment" it must be recognized that there is no actual court hearing. In fact the acknowledgment statute was further amended in 1997 to provide that the acknowledgment shall be binding "without requiring or permitting judicial ratification." Public Act No. 97-7 spec. session June 18, 1997. A later amendment purports to even remove filing of the documents from the Superior Court. Public Act No. 99-193 § 7, but seeCintron v. Valentin, superior court judicial district of New Britain, doc. no. FA99-0498286 (May 17, 2000 Dranginis, J.); Plemmons v. Newton, 16 S.M.D. ___ (Sosnoff-Baird, F.S.M., Jan. 7, 2002); Cahoon v. Smith, 15 S.M.D. ___ (Bentivegna, F.S.M. Oct. 5, 2001); Gonzalez v. Alers, 14 S.M.D. ___; (2000). The legislative scheme precludes the opportunity for a court canvass. Martinez v. Collins, 15 S.M.D. ___ (2001).
 II FRAUD
A judgment obtained by fraud may be attacked even after the time limitation for opening the judgment. Kenworthy v. Kenworthy, 180 Conn. 129,131, 429 A.2d 837 (1980); Gatling v. Gatling, Superior Court judicial district of Waterbury, doc. no. 52272 (Aug. 9, 1990, Harrigan, J.);Cardona v. Negron, 13 S.M.D. 133, 139 (1999).
The moving party bears a heavy burden of proof. "Fraud must be proven by `clear and satisfactory evidence', a standard more exacting than a fair preponderance of the evidence." Smith v. Brown, Superior Court judicial district of Waterbury, doc. no. 80340 (June 16, 1993, Harrigan,J.); Gatling v. Gatling, supra; Dawkins v. Nash, supra; Martinez v.Collins, supra; see also Alaimo v. Royer, 188 Conn. 36, 39, 448 A.2d 207
(1982). The standard is also phrased "clear, precise and unequivocal evidence." Connell v. Colwell, 214 Conn. 242, 571 A.2d 116 (1990); CT Page 6999Alaimo, supra, 188 Conn. 39; Lopinto v. Haines, 185 Conn. 527, 534,441 A.2d 151 (1981); DeLuca v. C. W. Blakeslee Sons, Inc., 174 Conn. 535,546, 391 A.2d 170 (1978); T.O. Richardson Co. v. Brockbank, Superior Court judicial district of Hartford/New Britain at Hartford, doc. no. 703826 (March 23, 1995, Sheldon, J.); Pullen v. Cox, 9 S.M.D. 134, 138 (1995).
In order to establish fraud, the moving party must prove: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Miller v. Appleby, 183 Conn. 51, 54-55,438 A.2d 811 (1981); Paiva v. Vanech Heights Construction Co.,159 Conn. 512, 515, 271 A.2d 69 (1970); Barnes v. Starr, 64 Conn. 136,1250, 28 A. 980 (1894); Gatling, supra; Pullen v. Cox, supra, 9 S.M.D. 138. Additionally, the judgment may be opened only if the moving party is not barred by any of the following restrictions: "(1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) § 11.7, pp. 540-42; 36 Ill.L.Rev. 894, 896-97 (1942). Furthermore, the granting of such relief must not unfairly jeopardize interests of reliance that have taken shape on the basis of the judgment. James Hazard, Civil Procedure (2d Ed.) § 13.14, p. 687." Varley v. Varley, 180 Conn. 1, 4, 428 A.2d 317
(1980); Pullen v. Cox, supra, 138.
In the present case there is no evidence to suggest a fraudulent statement. The defendant admits that even though he had occasional doubts that Aaron was his child, he never questioned Ms. Martin about it. Transcript 16-17. The plaintiff testified that when she signed the affirmation, she thought the defendant was in fact Aaron's father. There was no attempt by the plaintiff to induce the defendant to give up his right to a genetic test or to sign the acknowledgment.
The acknowledgment procedure does not require the mother to verify the basis of her nomination of a putative father. She is under no legal obligation to divulge her sexual history to the defendant or to the party supervising execution of the affirmation. In fact in view of the fact that the parties were never married to each other, there is no legal obligation of either party to maintain sexual exclusivity. In the last quarter of the twentieth century after the "sexual revolution" of the "sixties, even a reasonable expectation in the context is implausible.Joseph v. Lilburn, supra. The mere fact that the plaintiff was wrong and CT Page 7000 later became convinced that someone other than the defendant fathered Aaron does not rise to the level of a fraud.
 III MISTAKE
As was previously noted, acknowledgments filed with the court prior to July 1, 1997 may be "reconsidered" by the court for up to three years after the date of filing. After the expiration of three years the court is precluded from opening the judgment created by the acknowledgment. In this respect an acknowledgment is analogous to a stipulated judgment which the court has jurisdiction to open for a four-month period.
Thereafter the acknowledgment "may be challenged in court or before a Family Support Magistrate . . . only on the basis of fraud, duress or material mistake of fact which may include evidence that he is not the father. . . ." General Statutes § 46b-172 (a)(2); Veilleux v.Burski, 14 S.M.D. ___ (2000); see also Yeong Gil Kim v. Magnotta,49 Conn. App. 203, 209, 714 A.2d 38 (1998); Solomon v. Keiser,22 Conn. App. 424, 577 A.2d 1103 (1990); McDonnell v. McDonnell, Superior Court judicial district of Hartford, doc. No. FA94-0535761 (Bishop, J., February 2, 1999). The statute includes "evidence that he is not the father" as a "material mistake of fact". There is no requirement of "mutual mistake". The material mistake can be mutual or unilateral. It is significant that the clause is preceded by the word "may". Thus the statute does not create a bright line standard but merely allows the court to consider evidence of nonpaternity among other factors. Josephv. Lilburn, supra; White v. Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365
(2000).
Some courts have recognized a slightly differing standard in opening a judgment entered by consent compared to those resulting from adjudication. Gillis v. Gillis, 214 Conm 336, 572 A.2d 323 (1990). In the case of stipulated judgments, contract principles pertinent to reformation are sometimes invoked. Reformation may be applicable due to mutual mistake or a unilateral mistake coupled with fraud or inequitable conduct. Rodie v. National Surety Corporation, 143 Conn. 66, 69,118 A.2d 908 (1955); Shawmut Bank Connecticut v. Connecticut LimousineService, Inc., 40 Conn. App. 268, 273, 670 A.2d 880 (1996); City IronWorks, Inc. v. Frank Badsteubner Post No. 2090, 22 Conn. Sup. 230,167 A.2d 462 (1960).
Mutual mistake has been held to exist where both parties are mutually mistaken about the same material fact. Buol Machine Co. v. Buckens,146 Conn. 639, 641, 153 A.2d 826 (1959); Dainty Rubbish service, Inc. v.CT Page 7001Beacon Hill Association, Inc., 32 Conn. App. 530, 537, 630 A.2d 115
(1993); see also Harlach v. Metropolitan Property Liability Ins. Co.,221 Conn. 185, 190, 602 A.2d 1007 (1992). Yet in other instances, courts have held that although a party moving to open a judgment must "demonstrate that there is a good and compelling reason for the court to grant the motion . . ." the applicable statutes and practice rules ". . . [do] not contain a precise list of what the moving party must show in order to prevail. . . ." First Union National v. TDB International,22 Conn.L.Rptr. 252 (1998).
A motion to open "is not to be granted readily, nor without strong reasons, it may and ought to be when there appears cause for which the court acting reasonably would feel . . . bound in duty to do so."McCulloch v. Pittsburgh Plate Glass Co., 107 Conn. 164, 167, 140 A. 114
(1927); Wildman v. Wildman, 72 Conn. 262, 270, 44 A. 224 (1899). "There is no bright line standard as to what constitutes a `mistake' sufficient to confer jurisdiction on a court to open a judgment after four months."McNealy v. Dancy, 13 S.M.D. 107, 116, 1999 Ct. Sup. 12793 (1999).
This court previously held that the "acknowledgment statute would be rendered meaningless if despite full knowledge of the possibility of genetic tests and a contested trial and three years to move to open the judgment or review the acknowledgment a respondent could challenge the paternity judgment. If there was a mistake it was caused by the defendant's failure to avail himself of the DNA test timely or to seek review within the three year period." Joseph v. Lilburn, supra; White v.Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365 (2000).
This court continues to have difficulty with the concept that a person who categorically waives his rights to contest paternity may then come back six years later and claim the very rights that he knowingly waived. However, the present case is distinguishable from the cases cited. The defendant and the plaintiff had a family relationship that lasted over twenty-two years. They had three other children during that time that they raised to adulthood. While the parties eschewed the bonds of matrimony, under the circumstances the defendant had a reasonable expectation, if not of fidelity, at least of candor. Had the plaintiff disclosed to the defendant her doubts as soon as she perceived them, he would have had the opportunity to seek a review of the acknowledgment within the three-year window.
Furthermore, there has been no intervening court activity which would have provided the defendant with an opportunity to consider the issue of Aaron's parentage. In fact although the defendant states as a reason for his motion that he is still paying child support the support order never actually included Aaron. The remaining support order ended April 4, 2002 CT Page 7002 when Andre reached his eighteenth birthday. The only remaining order is the $5.00 per week payment on the arrearage.
There has been a mutual mistake. Both plaintiff and defendant mutually believed Mr. Harrell to be Aaron's biological father. The plaintiff suspected the error far sooner than the defendant did. Furthermore, the DNA test results on Samuel Aryee meet the statutory requirement of evidence that the defendant is not the father.
 IV OPPORTUNITY TO LITIGATE
The opportunity to litigate the issue of paternity was the key element in several cases in which an opening of a paternity acknowledgment or judgment was denied. Bleidner v. Searles, 19 Conn. App. 76, 561 A.2d 954
(1989); Perkins v. Perkins, 3 Conn. App. 322, 487 A.2d 1117 (1985);Angelus v. Angelus, 20 Conn.L.Rptr. 252 (1997); Mauriello v. Mauriello,1992 Ct. Sup. 4774, Superior Court, judicial district of Waterbury, doc. no. 84337 (Harrigan, J., May 29, 1992); Pagani v. Davis, Superior Court judicial district of Hartford / New Britain at Hartford, doc. no. 602649 (Kaplan, J., July 18, 1991); Pullen v. Cox, 9 S.M.D. 134 (1995).
However, in other cases, courts have opened paternity judgments notwithstanding passage of significant periods of time and evidence of opportunity to litigate. Delgado v. Martinez, 25 Conn. App. 155,593 A.2d 518 (1991); Shelby v. Shelby,[5] 13 Conn.L.Rptr. 130 (1994);Johnson v. Domina, Superior Court Judicial District of Hartford, doc. No. FA88-0340848, 1998 Ct. Sup. 11005 (Dranginis, J., Sep. 24, 1998);Cardona v. Negron, 13 S.M.D. ___; (1999).
In the present case, there was a clear waiver of a trial when the acknowledgment was executed. However, unlike many of the cited cases, there was no intermediate activity such as contempt proceedings or motions. In those cases, there is the sense that the defendant was already in court yet failed to raise his claim of nonpaternity. While nothing prevented the present defendant from earlier initiating a motion to open, the force of inertia prevailed. The court concludes that the factor of opportunity to litigate weights against the defendant but not as strongly as in cases with significant ongoing activity.
 V LACHES
"Laches consists of an inexcusable delay which prejudices the CT Page 7003 defendant." Bozzi v. Bozzi, 177 Conn. 232, 239, 413 A.2d 834 (1979);Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 685, 116 A.2d 906 (1955);Brock v. Cavanaugh, 1 Conn. App, 138, 140, 468 A.2d 1242 (1984); Lowndsv. Lownds, 41 Conn. Sup. 100, 551 A.2d 775 (1988); Lynk v. Lynk, 11 S.M.D. 233, 235; Thomas v. Ah Tau Ah Nee, 8 S.M.D. 135, 139 (1994);Samatowitz v. Samatowitz, 4 S.M.D. 30 (1990).
"Laches consists of two elements. First there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant . . . as where, for example, the defendant is led to change his position with respect to the matter in question." (Citations omitted; internal quotation marks omitted.) Papcun v. Papcun, 181 Conn. 618, 620-21, 436 A.2d 282 (1980).
The delay in this case did not prejudice the plaintiff as will be discussed subsequently. It might be argued that the child is prejudiced by the delay. However, the fact that the biological father has been identified minimizes this prejudice. The court will separately analyze the child's independent interest. The court finds the motion not barred by laches
 VI ESTOPPEL
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse. . . . Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done." (Citations omitted; internal quotation marks omitted.) Bozzi v. Bozzi, 177 Conn. 232, 241-42, 413 a.2d 834 (1979).
"Estoppel rests on the misleading conduct of one party to the prejudice of the other." W. v. W., 248 Conn. 487, 496, 728 A.2d 1076 (1999);Remkiewicz v. Remkiewicz, 180 Conn. 114, 119, 429 A.2d 833 (1980). "[E]quitably estopping parents from denying parenthood is an extraordinary measure because it involves a judicially created imposition of the parental status . . ." W. v. W., supra, 248 Conn. 503-04. CT Page 7004
Neither element of estoppel is clearly established in this case. Moreover, it has been held that fathering the child, including voluntary support should be encouraged as a matter of public policy, hence should not be the basis for estoppel. J.C. v. G.C., 21 Conn.L.Rptr. 255 (1998). The defendant's motion is not barred by estoppel.
 VII THE INTEREST OF THE STATE OF CONNECTICUT
"In many paternity cases the State has a significant financial interest represented by either ongoing public assistance or recoupment of past public assistance. Even if no temporary family assistance has been paid, the State has an interest in a final paternity determination to secure proper financial support for the child with an eye to averting the necessity for future state assistance. See White v. Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365 (2000); McNealy v. Dancy, 13 S.M.D. 113, 115,1999 Ct. Sup. 12793, 12795 (sub nom. Tiffany M. v. Walter D.) (1999)."Drakeford v. Ward, 15 S.M.D. ___, 2001 Ct. Sup. 15865 (2001). Even absent a direct fiscal interest Connecticut "evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209, 662 A.2d 107 (1995). "The State's financial interest is not the determining factor but one of many the court must analyze." Joseph v. Lilburn, 14 S.M.D. ___, (2000).
In the present case, the court can not ascribe significant weight to the State's interest. Since no support order was ever issued for Aaron, obviously there is no arrearage, or any collected money necessitating a refunds.[6] Any financial concern is merely speculative, concerning possible future support orders. The facts suggest that collection of future support from Mr. Aryee is as feasible if not more so than from Mr. Harrell.
 VIII POSITION OF THE PLAINTIFF MOTHER
The plaintiff testified credibly that she believed the defendant to be Aaron's father when she signed the affirmation. Transcript 26. When she began to have doubts, she did not disclose this to anyone. Eventually, she began suggesting to Mr. Aryee that he take a DNA test. He refused, and persisted for several years. Finally, he agreed. When the test results confirmed that Mr. Aryee and not Mr. Harrell was Aaron's father, she immediately notified the defendant.
Subsequently, the plaintiff has disclosed to Aaron that Mr. Aryee is CT Page 7005 his biological father. She believes that Aaron will also continue to have a relationship with the defendant who he continues to call "dad". She encourages continued visitation with the defendant correctly noting that the defendant continues to be the biological father of three other children of their relationship. Accordingly, the plaintiff endorses granting of the motion to open. Transcript 33.
 IX INTEREST OF THE MINOR CHILD
Connecticut has long recognized that children have a separate and independent interest in family relations matters. In re Bruce R.,234 Conn. 194, 209-210, 662 A.2d 107 (1995); Nye v. Marcus, 198 Conn. 138,502 A.2d 869 (1985); Guille v. Guille, 196 Conn. 260, 492 A.2d 175
(1985); Salvio v. Salvio, 186 Conn. 311, 441 A.2d 190 (1982); Yontef v.Yontef, 185 Conn. 275, 440 A.2d 899 (1981). "It can no longer be disputed that the minor child . . . has a separate and distinct interest in the outcome of this motion." Pullen v. Cox, 9 S.M.D. 134, 145 (1995). Our Supreme Court has held that minor children even may appeal an order regarding their own support in the absence of a guardian ad litem, if the trial court finds that it is in their best interests to do so. Newman v.Newman, 235 Conn. 82, 663 A.2d 980 (1995).
The very right of the child to knowledge of his parentage is among the factors to be weighed in opening a judgment. Andrews-White v. Mitchell,15 Conn.L.Rptr. 629, 1995 Ct. Sup. 12880 (McWeeny, J. Nov. 13, 1995);Lillibridge v. Lillibridge, Superior Court Judicial District of Hartford, doc. No. FA89-0356816 (Dranginis, J., October 21, 1998)[7];Culbreath v. Agnew, 16 S.M.D. ___, (Colella, F.S.M., Mar. 14, 2002);Colangelo v. Hunter, 15 S.M.D. ___, 2001 Ct. Sup. 16693 (Colella, F.S.M., 2001); Dawns v. Nash, 15 S.M.D. ___, 7 Conn.Ops. 1302, 2001 Ct. Sup. 14254
(Colella, F.S.M., 2001); Anderson v. Bailey, 15 S.M.D. ___ (Burt,F.S.M., Feb. 14, 2001); Taylor v. Martin, 14 S.M.D. ___,26 Conn.L.Rptr. 404
(2000); McNealy v. Dancy, 13 S.M.D. 107, 113, 1999 Ct. Sup. 12793
(1999); Cardona v. Negron, 13 S.M.D. 133, 142, 1999 Ct. Sup. 10847
(Matasavage, F.S.M., 1999). In opening a ten year old dissolution judgment to allow genetic tests, the court Dranginis, J, held "that the right of the child to knowledge and establishment of paternity supercedes any interest the court might have in preserving a judgment entered by default. . . . This child's interest in preserving rights which grow from the biological father must take precedence even over a ten year old judgment of the court." Johnson v. Domina, Superior Court Judicial District of Hartford, doc. No. FA88-0340848, 1998 Ct. Sup. 11005 (Sep. 24, 1998). CT Page 7006
Financial support is linked to the best interests of a minor child. "Connecticut child support enforcement legislation clearly evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209,662 A.2d 107 (1995). Support is one of the "best interest" considerations the court must consider. Id., 210-12; In Interest of K.J.K.,396 N.W.2d 370. 371-72 (Iowa App. 1986); In Interest of A. B.,151 Wis.2d 312, 322, 444 N.W.2d 415 (Wis.App. 1989). In the present case, however, although the acknowledgment was filed some six years ago, and notwithstanding the existence of support orders for the other three children of the relationship, neither the plaintiff nor the State moved to modify the order to include Aaron or increase the amount of the order. It must be regarded as equally probable that a support order would be established against Mr. Aryee as it would against the defendant.
The attorney for Aaron has filed a written report of his investigation and recommendations. The report suggests that this six-year-old child is managing to cope with this uncommon situation surprisingly well. He has been made aware that Samuel Aryee is his biological father. Since the results of the genetic test became known, the plaintiff and Aryee have established a visitation schedule for Aaron which includes overnight visitation on some weekends. The attorney reports: "He loves Samuel and calls him daddy. . . . He also loves James and calls him daddy."
Notwithstanding his earlier resistance to undergoing DNA testing, Mr. Aryee has indicated to the attorney a willingness to pay child support if ordered by the court. He claims to already provides the plaintiff money for Aaron albeit not on a regular basis and expends money on Aaron during visitation. At the time of the interview, Mr. Aryee was employed as an accountant and has the resources to provide adequate financial support for Aaron.
There is a serious potential obstacle. At the time of the interview Mr. Aryee had been ordered deported to his native Ghana. He has apparently exhausted his legal remedies and is subject to immediate deportation at any time. He stated that he would pay child support even if deported, and in fact would seek a shared parenting relationship whereby he would have Aaron with him in Ghana for part of the year. Aaron is aware of this possibility and has expressed interest in spending time with Mr. Aryee in Ghana.
Meanwhile, Aaron continues to have frequent contact with the defendant including some weekend visitations. The defendant has expressed interest in continuing this, although he is aware that if the motion is granted he will have no legal right to visitation and will need the permission of the parents. The defendant his mother, the older children by the CT Page 7007 plaintiff, and another child by a different mother (who lives with the defendant) all expressed their intention to continue to consider Aaron family. The plaintiff mother agrees that Aaron should continue to be considered part of Mr. Harrell's extended family.
The attorney concludes that the motion should be granted so that action can be taken to establish Mr. Aryee as Aaron's legal father. He feels that since Aaron already knows the truth, seems to be coping with it and in fact seems to be bonding and establishing a father-son relationship with Aryee even while maintaining bonding with Harrell, that the best interests of the child lie with his true biological father. He also believes that Aryee's stronger financial position auger "a better economic future" than is likely to be provided by the defendant.
 X CONCLUSIONS
In view of the fact that the minor child by his attorney and the plaintiff support the opening of the judgment, it is only the State of Connecticut that opposes it. The State's financial concern is slight and perhaps its opposition is focused in terms of fidelity to the statutory scheme envisioned by the acknowledgment statute.
The latter concern is far from trivial. While it has been frequently observed that the acknowledgment statute is troublesome or even flawed,Plemmons v. Newton, 16 S.M.D. ___ (2002); Martinez v. Collins, 15 S.M.D. 1 (2001); Cahoon v. Smith, 15 S.M.D. ___; (2001); Dawkins v. Nash, 15 S.M.D. ___, 7 Conn.Ops. 1302, 2001 Ct. Sup. 14254 (2001), it is nonetheless the present law of the State. As such, it cannot be ignored, and the waivers implicit in the acknowledgment documents must be accorded considerable weight. "The defendant declined genetic testing at his peril. It clearly is not in a child's best interest to allow a defendant to revoke his paternity at any time during the child's life." Dawkins v.Nash, supra, 15 S.M.D. ___. In this context the defendant has not made a compelling case for the granting of his motion. However, the grounds of mutual mistake appears to be present since the plaintiff mistakenly believed the defendant to be Aaron's father, but then delayed informing the defendant when she first suspected the mistake. The defendant is not barred by laches or estoppel.
The court places substantial weight on the opinion of the child's counsel and guardian ad litem. Cruz v. Hudson, 16 S.M.D. ___ (2002);Morales v. Rios, 15 S.M.D ___ 2001 Ct. Sup. 1380 (2001); Hemingway v.Jones, 15 S.M.D. ___ (Burt, F.S.M., Feb. 16, 2001). In his opinion, the judgment should be opened. There is clear and convincing evidence that CT Page 7008 the defendant is not Aaron's biological father. The genetic test results on Mr. Aryee provide the strong evidence in this regard.
In this twenty-first century, it is becoming apparent that the traditional concept of family is, for better or worse, expanded into new and hitherto unexplored constellations. While the circumstances of this case might be expected to be traumatic to a six-year-old boy, the attorney's report suggests the opposite. Aaron seems to be thriving. Rather than being confused or damaged by the circumstance of having two fathers, he seems to accept this and even approximates the benefits of double the paternal love. It is far from certain that in the long term, these benefits will continue. However, since the adult parties have already proceeded as if the designation of biological father and childhood father has taken place, and the child has apparently adjusted, the court on balance, agrees that the best interests of the child in this case outweigh the factors of finality of judgment and conformity to the limitations of the acknowledgment statute.
Accordingly, the motion to open the judgment is granted. The paternity acknowledments for Aaron Harrell is opened and vacated. The acknowledgments for the other children of the parties remain in full force and effect as does the support order and the arrearage accruing thereunder.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate